

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-13-00061-CR

_____

KENNY JIMENEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2012-435437; Honorable Brad Underwood, Presiding

January 6, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Following a jury trial, Appellant, Kenny Jimenez, was found guilty of aggravated robbery and sentenced to confinement for life.[1]  Appellant asserts on appeal that the trial court erred by (1) omitting the theory of "law of parties" in the application paragraph

_____

[1] See TEX. PENAL CODE ANN. § 29.03 (West 2011).  An offense under this section is a felony of the first degree.

of the jury charge and (2) admitting his personal rap lyrics during the punishment phase of the trial. We affirm.

BACKGROUND

In July 2012, a three count indictment was filed alleging that, on or about June 10, 2012, Appellant, "did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place [Chelsea Betenbrough (Count 1), Brianna Neighbors (Count 2), and Brittany Lancaster (Count 3)] in fear of imminent bodily injury or death, and [Appellant] did then and there use or exhibit a deadly weapon, to-wit: a firearm." At trial, Chelsea, Brianna and Brittany identified Appellant as the person who robbed them at gunpoint in a nightclub parking lot. They testified that, at approximately 11:45 p.m., they were between two cars parked facing a brick wall when a silver SUV pulled behind the cars blocking their exit. Appellant emerged from the SUV carrying a shotgun. He cocked the gun and ordered each of them to give him their "stuff." They gave him their cellphones, purses, I.D.s, $30 (a ten and a twenty dollar bill), and a wristlet. During the robbery, other persons in the SUV were yelling encouragement to Appellant. After taking their property, Appellant returned to the SUV. The SUV then backed into a parked car and sped away.

Officer Andrew Evans received a radio dispatch describing the SUV and spotted a vehicle matching its description at a convenience store. As he pulled beside the SUV, he saw Appellant. He activated his lights and the SUV accelerated. Officer Evans gave chase. After several miles, the SUV made a sharp turn, hit a curb and completely rolled

2

over.  Appellant's wife picked up the child thrown from the SUV and ran.  Appellant also fled.  Two other occupants were apprehended at the scene of the accident.  In an inventory search of the SUV, Officers found and confiscated Chelsey's, Brianna's and Brittany's property, as well as the shotgun used in the robbery.  Appellant, his wife and his child were taken into custody after officers searched the surrounding yards.  When searched, Appellant had a shotgun shell of the same caliber as the shotgun retrieved from the SUV in his pocket.

On February 13, 2013, the court submitted Count 1 of the indictment to the jury.  The jury found Appellant guilty as charged and assessed his sentence at confinement for life.  The trial court entered a judgment in accordance with the jury's verdict and this appeal followed.

JURY CHARGE

In analyzing a jury-charge issue, we first determine if error occurred, and if so, we conduct a harm analysis.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  The degree of harm required for reversal depends on whether appellant has preserved error by objection.  *Id.*  A jury-charge error requires reversal when, after proper objection, the appellant suffers "some harm" to his rights.  *Id.; Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g), *reaffirmed, Middleton v. State,* 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).  Because Appellant did not object to the omission of the "law of parties" theory in the application paragraph, reversal is not required unless Appellant has shown "egregious harm."  *Almanza*, 686 S.W.2d at 174.  "Egregious harm" is a difficult standard to meet.  *Taylor v. State*, 332 S.W.3d 483, 490

(Tex. Crim. App. 2011). The record must show "actual, not just theoretical, harm to the accused," *id.* at 490-91, and the appellate court must be able to conclude that, as a result of the complained of error, the defendant has been "deprived of a fair and impartial trial." *Id.* at 490.

The State candidly concedes the trial court committed charge error by the complained of omission, but it goes on to assert Appellant was not harmed thereby. Appellant asserts the omission "vitally affected [his] defensive theory" at trial. This assertion is, however, counter to the position Appellant took at trial. During trial, Appellant's counsel objected to any language in the charge relating to the law of parties, asserting Appellant was indicted as a principal and the law of parties was not raised by the trial's evidentiary record.[2] Further, we find Appellant suffered little, if any, harm from the omission because of the overwhelming evidence of his guilt as a principal, i.e., the testimony of three eyewitnesses identifying him as the perpetrator, describing the SUV in which he was a passenger and the shotgun used in the robbery, plus the presence of the stolen property and shotgun at the scene of the SUV accident where he was apprehended. Appellant's first issue is overruled.

PUNISHMENT PHASE—RAP LYRICS

Appellant asserts the trial court erred by permitting the State to introduce Appellant's own rap lyrics in the punishment phase of the trial. Appellant wrote the lyrics while he was incarcerated and published them over the jail's telephone and by

---

[2] At trial, defense counsel stated: "Your Honor . . . I'm going to object to the inclusion of the parties language in the charge on Page 8, and anywhere else any parties language appears, because he was indicted as a principal. I'd submit that the law of the parties issue hasn't been raised by the evidentiary records of this particular case, and amounts to a comment on the weight."

4

letter. The lyrics describe various acts of violence as well as other crimes.[3] Appellant

asserts the lyrics were inadmissible under the First Amendment of the United States

---

[3] In part, the song lyrics read to the jury were as follows:

New wipe foreign car movin slow motion, butterfly, suicidal when them doors open. Press a button, then the engine will start, tires thick, and the rhymes got you in the dark. Hittin hard while I'm ridin through the block, or the hood, turn the music up a bit, represent for the hoods. Bad bitch down, the ride she be keeping it hood. Still I do what I want cuz I know that I could. Smellin good beer, white diamond chain on my neck. I hold it down for the south, north, east and the west. East coat and west coast movin city to state. San Antone's where I'm from, got me pushin the weight. I'm eatin cake non-stop, man. I'm going to survive high pitch, low pitch, yellow bone on the side. Young G's been the name ever since I was five. Young killa, hard hitta, shit, I'm one of a kind. Keep it movin player. I'm the first to advise. I'm advancing up in my skills. I refuse to retire. I never get tired, but gotta keep it goin. Wings on the back so I fly over the ocean. The mic's in my hand while I hold it in a lock. Can't stop, won't stop, Homie, turn me up a notch. So I give it what I got with my eyes wide open. I'm ready for whatever chillin, sippin, blunt blowin, and if I gotta die, Homie, I ain't even trippin, but I'll be damn if it was because I'm probably slippin. So fuck tryin wish for the wealth or the fame. Shit, I'm gonna be on, gotta be the best in this game. Of course I'm down the ride and pull a homicide. Got to stay on my feet so many want me to die. But they got it fucked up, I'm willin to let it buck, and hurt a motherfucker who really don't give a fuck. This is how I chose to live. My money is what it is. Run up on me if you want, I'll be happy to break a rib. I ain't bout to make a change. It's drivin me too insane. Disrespectin, I don't had it, so sucker stay out the way. You'll be layin in a grave. You say that I made a treat. That's a promise to my word, no hesitatin for death. Couldn't stop me if you wanna, nigga, gonna be - - go and bang your chick. Got them choppers all aboard, but ready to lay the rest. All them sentences you can't hang, 21 to entertain, keepin it gangsta, motherfucker, we crashin and rippin grain. Switchin lanes take your. . . the hustle game, but she gotta have the good lil, Homie, know what I'm sayin. I remain to keep it cool in representin for blue, south of united together Hispanic what it do. It's a rap and I ain't talkin about speakin flows, I'm talkin about a murder no shoes with no clothes. You the main I'm the . . . and the weed that I blow. You something that I don't need, but I . . . get blowed. Better know, skin tone brown, fillin throwed, freestyle to sippin liquor off the dome. If you want it we can get it whenever, just let me know. Matter of fact, I ain't trippin you Nigga's is fixin to choke. Bet I'm bout it like I'm heavy to make them fall like confetti. See I'm all bout the money and hate to use a machete, if I gotta. Well, steal from me you'll get killed. Peel the flesh from your bone, watch your blood as it spills down to the ground, you know. Them Nigga's talkin like they real, but they really some ho's runnin round talkin down on players for sure. Is it the skills that I use got me countin the dough. That's how I roll. To the end, one deep never slackin, and never acted like a ho. I know they's haters among them that I can . . . I stand on my feet while I ball. Right now I'm trapped behind metal doors on brick walls.

They don't want it. I'm ready to go to war blowin chronic. I'm ready for anybody, bitch, nigga, it get ironic. Get to trippin and I promise your body will get to flippin. Run up on me if you dare, you better be comin with it, I ain't jokin.

Lucky they's niggas talking like they hot, putting bullets in my chamber, these niggas I'm fixin to drop. Fuck a cop, shit, I'm ready to put a body in stock. Motherfuckers will be diein, click clockin my silver Glock. Drop top, I'm . . . but tipsy from drunk and drank. I'll be damned to love you niggas who give me nothing but hate. You a cake, bitch, I'm a real

5

Constitution and Rules 403 (probative value of relevant evidence outweighed by danger of unfair prejudice) and 404 (inadmissibility of character evidence) of the Texas Rules of Evidence.

Appellant's First Amendment assertions are somewhat amorphous and he cites no case law in support of the notion that the admission of rap lyrics during the punishment phase of a criminal trial written by a defendant prior to the proceedings constitutes a violation of his freedom of expression. When Appellant wrote the lyrics, he did so freely and published them twice, once over a jail telephone he knew would be recorded and again in a letter he knew would be read. In each instance, he was allowed to do so without any interference from authorities. The issue, then, is not one of constitutional proportions, i.e., whether Appellant's freedom of expression was interfered. Rather, the issue is one concerning the admissibility of evidence. During the

---

thug. Show them how it be, Mr. Lucky, this shit will really get rough. No nuts, no glory, I'm loyal to my hood. Now, we plexin once again to be honest, I wish you would understand disrespectin will lay you inside a grave. Have respect for who I be, motherfucker. Participate, retaliate, is always in the mix. I trust no man they be quick to hit a lick. So I must remain one deep till I'm in the ground. Here's a little demonstration, nobody's been found. Back down.

When I'm comin down to the block, you better run, and no tellin what's gonna happen, I'm lethal without a gun. I'm a goon myself, that's strapped up and heated, bullets to your chest will keep you niggas from bleedin. Nobody, I can tell you that off top, pussy packer motherfuckers, I promise you better not. Everybody beware the message I write along. If you witness any murder you the next to be gone. Rest in peace to my Homies, revenge is packin in chrome, in cars . . . devastated boy better leave me alone. . . . while I'm searchin and workin to get the bread. Hesitations, I ain't feelin my body built to be strong. Move along or bring the drama if you want to get it. Any place, any time, no doubt I'll be attendin. You the host, but I'm bout to turn your ass into a ghost. So quick, too fast, be ready to overdo.

They don't want it. I'm ready to go to war, blowin chronic. I'm ready for anybody, bitch, nigger, it get ironic. Get to trippin, and I promise your body will get to flippin. Run up on me if you dare, you better be coming with it. I ain't jokin.

6

punishment phase of trial, did the trial court err by admitting into evidence rap lyrics written by Appellant? We think not.

Absent an abuse of discretion, we will not disturb a trial court's decision to admit evidence. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). A trial court abuses its discretion when it acts outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (stating the trial court "has the best vantage from which to decide" admissibility questions). Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure governs the admissibility of evidence during the punishment phase of a noncapital trial and provides evidence may be offered by the State and defendant "as to any matter the court deems relevant to sentencing including . . . evidence of his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried . . . ."

A defendant's choice of tattoos, like his personal drawings, can reflect his character and/or demonstrate a motive for his crime. *Conner v. State*, 67 S.W.3d 192, 201 (Tex. Crim. App. 2001) ("meaning behind appellant's tattoos was relevant to appellant's character and hence punishment"). *See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (appellant's tattoos and his drawings were evidence of appellant's hatred for African-Americans and his motive in committing murder); *Banda v. State*, 890 S.W.2d 42, 61 (Tex. Crim. App. 1994) (tattoo of word "Satan" was evidence that defendant believed Satan was telling him to kill people), *cert. denied,* 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Corwin v. State*, 870 S.W.2d 23, 35 (Tex. Crim. App. 1993) (recognizing that defendant's drawing had "an inferential bearing

7

on his character for violence, which relates in turn to the question of future dangerousness"). Similarly, Appellant's rap lyrics were relevant evidence of his character and propensity for future violence. *See Broadnax v. State*, No. AP-76,207 2011 Tex. Crim. App. Unpub. LEXIS 920, at *49 (Tex. Crim. App. Dec. 14, 2011) (not designated for publication) (concluding rap lyrics written by the appellant were not so unfairly prejudicial as to outweigh the probative effect of allowing a jury to "rationally gauge the probability that appellant would be a danger in the future").

Having reviewed the entire record, we cannot say the trial court abused its discretion by admitting Appellant's rap lyrics into evidence during the punishment phase of trial. Appellant's second issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.