

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

NO. PD-0266-09, PD-0267-09, PD-0268-09

**TRACY PAUL TAYLOR, Appellant**

**v.**

**THE STATE OF TEXAS**

ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIRST COURT OF APPEALS
HARRIS COUNTY

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. PRICE, J., concurred. JOHNSON, J., dissented.

## O P I N I O N

Appellant, Tracy Paul Taylor, was convicted of three offenses of aggravated sexual assault and sentenced to seventy years' confinement with a fine of $10,000 for each offense. Much of the testimony at trial related to acts committed before Appellant turned seventeen. On appeal, Appellant argued in part that the jury charges were erroneous because they did not limit the jury's consideration to evidence of acts

committed after his seventeenth birthday. The court of appeals held that the error in the jury charges deprived Appellant of a fair and impartial trial. We granted review to consider the effects of the instructions received and not received by the jury in this case. We will reverse.

## I. PENAL CODE SECTION 8.07(b)

Texas Penal Code Section 8.07(b) states:

Unless the juvenile court waives jurisdiction under Section 54.02, Family Code, and certifies the individual for criminal prosecution or the juvenile court has previously waived jurisdiction under that section and certified the individual for criminal prosecution, *a person may not be prosecuted for or convicted of any offense committed before reaching 17 years of age* except an offense described by Subsections (a)(1)-(5).[1]

TEX. PENAL CODE ANN. § 8.07(b) (emphasis added).

## II. PROCEDURAL HISTORY

The jury found Appellant guilty of three offenses of aggravated sexual assault, as charged in three separate indictments. The earliest date cited among the indictments was "on or about September 01, 2002." On that date, Appellant was seventeen years old.[2] Therefore, the indictments did not violate Section 8.07(b), nor did the verdict forms, which referred back to the indictments.[3] The issue before this Court relates to the jury

---

[1]Subsections (a)(1)-(5) are not applicable in this case.

[2]Appellant turned seventeen earlier that year on March 25, 2002.

[3]For two of the three offenses, the indictments evolved from the time they were originally filed to the time they were presented at the start of the trial. The altered allegations pertained to the dates of the offenses and the specific methods of assault. However, the inconsistences do not

charges.

At trial, testimony referred to various years as the start of Appellant's abusive conduct, all pre-dating Appellant's seventeenth birthday. A child-abuse pediatrician testified regarding her examination of the victim, which took place at the Children's Assessment Center in 2006. Her report, admitted into evidence, stated that Appellant touched the victim inappropriately for the first time when the victim was seven. Appellant would have been twelve at that time. The victim's father dated the start of his daughter's contact with Appellant as the fall of 1998, when the victim would have been eight and Appellant would have been thirteen. The victim's own testimony described the "worst" years of abuse as her sixth through eighth grade years. She agreed with the State's assertion that in sixth grade she was ten and eleven. Appellant would have then been fifteen and sixteen.[4]

The jury charges did not contain an 8.07(b) instruction to limit the jury's consideration to events after Appellant's seventeenth birthday. After reviewing the court's proposed charge, defense counsel stated that she had no objections.

At the court of appeals, Appellant argued that, without an 8.07(b) instruction, the

---

affect our analysis because the final revised dates that were presented to the jury all fall after Appellant's seventeenth birthday (as were all of the dates in the original indictments); and the earliest date, after the revisions, remained September 1, 2002.

[4]The record includes different dates of birth for the victim. The Children's Assessment Center report lists June 12, 1990 as the victim's date of birth, while the victim testified that her birthday was October 1. Therefore, to a small extent, these calculations are approximate.

charges were erroneous because the evidence presented at trial included acts committed before he turned seventeen. The court of appeals agreed, concluding that without an 8.07(b) instruction, "the charge authorized the jury to convict [A]ppellant based on acts he committed before his seventeenth birthday." *Taylor v. State*, 288 S.W.3d 24, 30 (Tex. App.–Houston [1st Dist.] 2009, pet. granted).

The State now argues to this Court that, in the absence of any request for an 8.07(b) instruction from defense counsel, the judge was not required to *sua sponte* instruct the jury on this point. The State also argues that the court of appeals should have found any error to be harmless.[5]

### III. ARTICLE 36.14 AND THE LAW APPLICABLE TO THIS CASE

The State's first issue asks if the trial judge was required to *sua sponte* submit an 8.07(b) instruction in this case. Code of Criminal Procedure Article 36.14 details the requirements and procedures for the delivery of the court's charge to the jury. TEX. CODE CRIM. PROC. ANN. art. 36.14. It states, "the judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." *Id.* Article 36.14 also provides that, before the charge is read to the jury, "the defendant or his counsel shall

---

[5]We granted the following two issues:
(1) Is the age-based defense located in Section 8.07(b) of the Texas Penal Code a "defensive issue" (as opposed to "law applicable to the case") for purposes of determining whether the trial judge must *sua sponte* submit a jury instruction on this defense?
(2) Was Appellant harmed by any error resulting from the absence of an instruction on the age-based defense located in Section 8.07(b) of the Texas Penal Code when the victim testified that the worst abuse occurred after Appellant turned 17 years old?

have a reasonable time to examine the same and he shall present his objections." *Id.* However, the judge's duty to instruct the jury on the law applicable to the case exists even when defense counsel fails to object to inclusions or exclusions in the charge; this may require the judge to *sua sponte* provide the jury with the law applicable to the case, under Article 36.14. So, even in the absence of action on the part of Appellant's defense counsel, if an 8.07(b) instruction were the law applicable to this case, the trial judge was required, under Article 36.14, to include it in the jury charges. We must assess whether the jury charges set forth the law applicable to the case, and specifically, whether an 8.07(b) instruction belonged in the jury charges.

We have previously held that Article 36.14 imposes no duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). An unrequested defensive issue is not the law applicable to the case. *Id.* So, we must classify an 8.07(b) instruction as the law applicable to the case or as an unrequested defensive issue.

In *Posey*, the instruction we labeled an "unrequested defensive issue" was a mistake-of-fact instruction. *Id.* at 59. The appellant argued that the trial court erred by not instructing the jury *sua sponte* on that point. *Id.* The defense of mistake of fact is codified in Section 8.02(a) of the Texas Penal Code.[6] TEX. PENAL CODE ANN. § 8.02(a).

---

[6]Note that in *Posey* we explained that an 8.02(a) instruction will not be a "defensive issue" in every case. *Posey*, 966 S.W.2d at 62. When a defendant timely objects to the omission of the instruction in the jury charge at trial, it will be the "law applicable to the case." *Id.*

The close proximity of Sections 8.02(a) and 8.07(b) in the Penal Code, both in the General Defenses chapter, invites a comparison of the statutes. Section 8.02(a) establishes mistake of fact as "a defense to prosecution," which correlates to its classification as a "defensive issue." *Id.* In contrast, Section 8.07(b) does not refer to a "defense" at all. TEX. PENAL CODE ANN. § 8.07(b). Rather, it is a prohibition of prosecutions and convictions based upon offenses committed before the age of seventeen. *Id.*

In addition to studying the language of 8.07(b) and its general applicability, we must also consider the particulars of the record before us in order to decide whether an 8.07(b) instruction is the law applicable to this case or an unrequested defensive issue. The State argues that an 8.07(b) instruction is a defensive issue in this case because defense counsel's theory at trial was that Appellant never sexually assaulted the victim, not that he only did so only before turning seventeen.[7] In other words, the State suggests that activating 8.07(b) and directing attention away from Appellant's pre-seventeen conduct would have contravened the defense's theory that Appellant was innocent at every age.

A feature of a defensive issue is that it is a strategic decision "generally left to the lawyer and the client." *Posey*, 966 S.W.2d at 63. However, the applicability of Section

---

[7]To support this reading of the defendant's theory of the case, the State cites to defense counsel's closing argument, where counsel stated, "the State simply has not met its burden of proof to you that Tracy Taylor committed these offenses."

8.07(b) is not contingent upon any party's theory of the case. It is not within the defendant's (or counsel's) discretion to decide whether or not he may be prosecuted for or convicted of offenses committed before turning seventeen. Even if the defense wanted to avoid a *legally* innocent argument, that does not change the fact that the jury in this case received evidence upon which they were statutorily prohibited from convicting Appellant.

Due to the repeated testimony regarding Appellant's pre-seventeen conduct, the absence of an 8.07(b) instruction in the jury charges is problematic. Further complicating matters is an instruction that *was* included:

> You are further instructed that the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed,[8] but that a conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time within the period of limitations. The limitation period applicable to the offense of aggravated sexual assault of a child is ten years from the date of the 18th birthday of the victim of the offense.

With this paragraph, the jury was instructed that it could ignore the dates cited in the indictments and could convict Appellant for any offense committed prior to the victim's twenty-eighth birthday, which will fall in 2018.

We noted a similar problem in *Alberty v. State*, 250 S.W.3d 115, 116 (Tex. Crim. App. 2008), in which indictments alleged that the defendant, as an adult, sexually assaulted a child. However, testimony described incidents of assault dating from the time the defendant was thirteen. *Id.* The jury charges in that case featured the following

---

[8]The dates alleged were the first, fifteenth, and thirtieth of September 2002 (all after Appellant's seventeenth birthday).

instruction, to which the defendant made no objection:

> You are instructed that the State is not required to prove the exact date alleged in the indictment. The term "on or about the [respective date]" means any date prior to the date of the filing of the indictment, August 27, 2003, and within the Statute of Limitations. The Statute of Limitations for this type of alleged offense is 10 years past the child's 18th birthday.[9]

*Id.* at 117. On appeal, the defendant asserted that the jury charges were erroneous because "they instructed the jury that they could convict appellant of any offense anterior to presentment of the indictment and within the statutes of limitations, when in fact he could only be convicted of offenses occurring on or after his seventeenth birthday, July 7, 2001." *Id.* This issue, highlighting the tension between 8.07(b) and the statute-of-limitations instruction, was misconstrued by the court of appeals in *Alberty* as a jurisdictional complaint. *Id.* We reversed and remanded the case for resolution of the jury-charge issue. *Id.* at 118. On remand, the court of appeals concluded that the jury charges were erroneous because the instruction received by the jurors contravened Section 8.07(b). *Alberty v. State*, No. 05-05-01687-CR, No. 05-05-01688-CR, 2008 Tex. App. LEXIS 5252, *8-9 (Tex. App.–Dallas July 16, 2008, no pet.) (not designated for

---

[9]Arguably, the statute-of-limitations instruction in *Alberty* was more injurious than the instruction featured in Appellant's jury charges because *Alberty*'s explicitly stated that the offense could have occurred on "any date prior" to the filing of the indictment. While the instruction in Appellant's charges established a certain future chronological limitation—the victim's twenty-eighth birthday—the past chronological limitation was more vague; it simply provided that the State was not bound by the specific dates alleged in the indictments. *Alberty*'s instruction more blatantly contravened Section 8.07(b)'s prohibition of convictions based upon juvenile conduct.

publication).[10]

We, too, conclude that a jury charge is erroneous if it presents the jury with a much broader chronological perimeter than is permitted by law. The trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). This is an "absolute sua sponte duty," and, in this case, the trial judge had a *sua sponte* duty to provide an 8.07(b) instruction. *Id.* Although the jury instruction here did not specifically refer to "any offense anterior to the presentment of the indictment" as did the charge in *Alberty,* it did not limit the jury's consideration of such. The absence of an 8.07(b) instruction, combined with the evidence of Appellant's conduct as a juvenile and the instruction that the jurors did receive—that "a conviction may be had" for any offense committed before the victim's twenty-eighth birthday—ultimately resulted in inaccurate charges that omitted an important portion of the law applicable to the case. Therefore, we find a violation of Article 36.14 and must proceed to a second step of analysis.

## IV. ARTICLE 36.19 AND *ALMANZA*

After finding error in the court's charges, we must next consider whether Appellant was harmed by the error. *Alberty*, 250 S.W.3d at 119. Article 36.19

---

[10]The court of appeals in *Alberty* then proceeded, under *Almanza v. State* (discussed *infra*), to determine that the defendant was egregiously harmed. *Alberty*, 2008 Tex. App. LEXIS 5252.

establishes the standard for reversal on appeal when the requirements of Article 36.14[11] have been disregarded: "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19.

In *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g), we construed Article 36.19 as presenting two distinct standards for jury-charge error, the application of each determined by whether the defendant objected at trial.[12]

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error.
> . . .
> On the other hand, if no proper objection was made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"–in short "egregious harm."

*Id.* at 171. Because Appellant did not object to the jury-charge error at trial, resolution of the instant case requires an egregious harm analysis, and we do not believe that egregious harm resulted from the charge error in this case.

---

[11]Article 36.19 addresses appellate review for a group of statutes, not just Article 36.14. The other articles to which this provision applies are 36.15, 36.16, 36.17, and 36.18. TEX. CODE CRIM. PROC. ANN. art. 36.19.

[12]Note that *Almanza* does not apply unless the appellate court first finds a violation of Article 36.14 (or any of the other articles referenced in Article 36.19). *Posey*, 966 S.W.2d at 60. "Neither 'harm' standard set out in Article 36.19 as construed by *Almanza* applies unless an appellate court first finds 'error' in the jury charge." *Id.*

As we have stated, "[e]gregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). In determining whether Appellant was deprived of a fair and impartial trial, we review "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. We will examine "any . . . part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused." *Id*. at 174. Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *Id*. at 172; *see Hutch*, 922 S.W.2d at 171.

### A. J.G.'s Testimony

J.G. testified that she began staying with Appellant's family at the age of eight (when Appellant was 13 years old). J.G's father paid Appellant's twin sister, Sheena, to babysit his daughter until he was able to pick her up after school, normally around 6:00 p.m. J.G. explained that Appellant initially treated her like an "annoying little sister," but this soon progressed such that he would be "mean" and make J.G. feel "uncomfortable." Referring to the acts of molestation, J.G. testified that "[i]n the beginning -- like when I first came to move down here, it didn't happen as much. Then as the years progressed, it

progressed, what he did."

The first instance that J.G. could remember when she felt "uncomfortable" happened in Appellant's mother's bedroom. J.G. could not recall her age at the time but did remember that, other than J.G. and Appellant, only Appellant's sick grandmother was home. Appellant asked J.G. if she wanted to play "Doctor." Appellant proceeded to roll a new roller paint brush up and down her leg. Then he took off her "bottoms" and put the handle of the brush inside of her vagina. Appellant stopped when his grandmother threw a shoe at the bedroom door. J.G. also recalled an occurrence months later when Appellant instructed her to put a CoCoa Puff in her vagina and leave it there. J.G. pulled out the cereal when Appellant left the room.

In addition, J.G. described an incident that took place when she was in the fifth grade. She stated that she knew it occurred shortly after she began going to Appellant's house because she remembered the navy pants that she was wearing then. J.G. testified that, when no one else was home, Appellant told her to go into the bathroom. There, he instructed her to stand on the toilet and pull down her pants, and he licked her vagina. Eventually, Appellant took J.G. into his bedroom, told her to take off all of her clothes, and "put his penis in [her] vagina."

Appellant began asking J.G. for oral sex "a lot," and they had vaginal and anal sex "a lot." In fact, J.G. testified that "something" would happen nearly every time she went over to the house. She could remember some instances clearly while others were only

recalled in flashes. Among the more vivid recollections were the times when Appellant instructed J.G. to put various things in her vagina (e.g., the top of a lava lamp, the handles of a broom and a hammer, an ice cube, a bar of soap, and a vibrator), and he would often attempt to push the objects in farther.

This type of abuse continued for years. J.G. testified that the "worst" years were between sixth grade (when J.G. was 10 and 11 and Appellant was 15 and 16) and eighth grade (when J.G. was 12 and 13 and Appellant was 17 and 18). She also asserted that Appellant "did it a lot" when she was in the seventh, eighth, and ninth grades, typically immediately after school. When J.G. would object to Appellant's demands, he would threaten to tell her father about the things that she had done, such as sneaking clothes into school during the fifth and sixth grades because her father thought they were too tight or too short.

The instances of abuse were not happening as much toward the end. J.G. claimed that about the time that Appellant started dating his future wife, she began to say "No" more often. J.G. stated that the molestation stopped when she turned 15 (at which time Appellant was 20 years old), but she emphasized that it occurred every day before that. In July 2006, the summer before she was to enter the eleventh grade, J.G. traveled to North Carolina with Appellant and his family to visit their relatives. During the trip, J.G. told Appellant's wife and sister-in-law about the abuse.

**B. Other Testimony**

During its case-in-chief, the State called several other witnesses to testify. J.G.'s father testified that he worked a lot, so J.G. would stay at Appellant's home during the day. She began spending time there in October 1998 (when she was eight years old), but her father was unaware of any abuse until J.G.'s outcry in July 2006. J.G.'s godmother attested similarly, stating that J.G. began staying over at Appellant's home when she was eight years old. She became aware of the sexual abuse when the family returned from North Carolina, at which time she took J.G. to the police station to file a report.

The deputy from the Child Abuse Investigation Unit who was assigned to J.G.'s case took the stand, too. Although he did not speak directly with J.G. during the course of the investigation, the deputy watched, via video, the interview between J.G. and a forensic interviewer. The deputy believed J.G.'s behavior to be consistent with other cases that he had seen involving sexual abuse. He also explained that a delayed outcry, one taking place some time after the initial abuse, was not unusual. Subsequently, a psychologist and a professional counselor with whom J.G. interacted at the Children's Assessment Center testified that J.G.'s behavior was consistent with years of sexual abuse but on cross-examination acknowledged that the same symptoms occur in children that were not sexually abused.

The pediatrician at the Children's Assessment Center who performed J.G.'s medical examination was called to the stand next. She explained that J.G. seemed emotionally distraught and complained of headaches and blood in her stool. A physical

examination showed that J.G. was healthy, with no signs of trauma. The doctor asserted that a normal exam is the most common finding in children who have been sexually abused because the vagina heals quickly and it is not uncommon for the hymen to remain intact. During the examination of J.G.'s anus, the doctor discovered a hemorrhoid but no bleeding. On cross-examination, the doctor acknowledged that the physical examination results concerning J.G.'s vagina and anus were also consistent with someone who had not been sexually assaulted. The physician's report indicated that Appellant touched J.G. inappropriately for the first time when the victim was seven (and Appellant would have been 12 years old) and the abuse continued until about six weeks before the exam (when Appellant was 20 years old).

In Appellant's case-in-chief, several witnesses testified and generally maintained that Appellant was never left alone with J.G., thereby suggesting that Appellant would not have had the opportunity to molest J.G. Appellant's mother testified that J.G. was never left alone with Appellant, but on cross-examination, she admitted that she worked long hours. Sheena asserted that she was paid to take care of J.G., so during those eight years, she was watching her all of the time and never left her alone with Appellant. Sheena and her husband explained that Appellant spent time at the library after school playing card games and Game Boy, and by the time he would return home, J.G.'s dad would have already picked her up. A friend who stayed in the family's home during September 2002 (when Appellant was 17) maintained that she never saw Appellant and J.G. together.

Sheena's husband, who moved into Sheena's room in September 2002 and remained there for three years, stated the same.

In its rebuttal, the State called Appellant's sister-in-law. She thought that she had seen Appellant and J.G. alone before, but she could not be sure. She also explained that after J.G. confided in her about the molestation, she was worried about J.G. returning to Texas in the same car as Appellant. The State also called Appellant's wife, who testified outside of the jury's presence. She stated that she met Appellant when he was 18 years old, and she was in disbelief when she heard J.G.'s outcry because she had never seen Appellant alone with J.G.

### C. Arguments of Counsel

The defense's theory was that Appellant never molested J.G.[13] During closing arguments, Appellant argued that the evidence was insufficient to prove beyond a reasonable doubt that he ever molested J.G. Appellant highlighted the testimony of several witnesses that he was never alone with J.G. during the eight-year period when the abuse allegedly occurred. He also indicated that J.G.'s emotional and physical symptoms could logically occur for reasons other than sexual abuse.

In contrast, the State's closing statement stressed the consistency of J.G.'s

---

[13]This was made clear in one of Appellant's first objections at trial. Outside of the jury's presence, Appellant suggested that J.G. was making up the allegations against him—J.G. was allegedly molested before she moved in with her father, and that is where "she got the idea to start saying she was molested by [Appellant]." The allegations of prior abuse were not developed at trial.

testimony, including that the sexual abuse began when she was in the fifth grade and continued until she turned fifteen. The State noted that the abuse started off slow but increased in frequency; in fact, the abuse occurred so often that one incident merged into another in J.G.'s recollection. The State referred to the initial abuse that occurred when J.G. was in the fifth and sixth grades (before Appellant was 17 years old). However, it also highlighted that some of the "worst" molestation occurred when J.G. was in the sixth, seventh, eighth grades, as well as part of the ninth grade. The State further pointed out that Appellant was 17, 18, and 19 years old when J.G. was in the seventh, eighth, and ninth grades, and by doing so, the State emphasized an age range for Appellant that complied with Section 8.07(b).

### D. Jury Charge

The jury charge erroneously instructed the jury that a conviction could be had for offenses "committed at any time within the period of limitations," which was "ten years from the date of the 18th birthday of the victim of the offense." The State suggests that "[t]here is no language in the jury instruction suggesting the consideration of dates before the presentment of the indictment" and argues that "the jury charge instruction focuses on looking forward in time ([J.G.'s] eighteenth birthday and beyond)." But we presume that the jury understood and followed the court's charges absent evidence to the contrary. *Hutch*, 922 S.W.2d at 172. Therefore, the jury charge authorized the jury to convict, in part, based on acts committed before Appellant's seventeenth birthday; however, it also

allowed the jury to consider acts that occurred after his seventeenth birthday but before the limitations period expired.

Taking the record as a whole, we believe that egregious harm did not result from the jury-charge error. The defensive theory was that no sexual abuse occurred at any time. It is unlikely that the jury believed that Appellant sexually assaulted the victim before he turned 17 years old but not after. In this case, the jury either believed Appellant or believed the victim.

This case can be distinguished from *Hutch* in which we held that egregious harm resulted from a charge error. There, "the instruction was 180 degrees opposite of what is should have been." *Id.* at 172. We explained that "we must presume the jury followed the erroneous instruction which authorized the stop if appellant *was* wearing a seat belt. In fact the opposite is true; such a stop would have been *illegal*. Under the erroneous instruction, the only way the jury could have convicted was by using illegally obtained evidence." *Id.*

Here, the error was the omission of an instruction, rather than the presentation to the jury of an erroneous instruction. In contrast to *Hutch*, the jury in this case could have convicted Appellant based upon evidence presented, even if the proper instruction had been given and Appellant's pre-seventeen acts were disregarded by the jury. The evidence showed an eight-year pattern of escalating sexual abuse of J.G. by Appellant. Appellant turned 17 years old midway through the abusive period, meaning that he is

subject to prosecution for his conduct beginning on that birthday or March 25, 2002, and evidence of molestation that occurred after that date was introduced at trial. For example, although J.G. described with more detail the instances that occurred during Appellant's juvenile years, she also described abuse that occurred when Appellant was 17, 18, 19, and 20 years old. The State emphasized this in its closing argument.

Accordingly, we conclude that Appellant was not denied a fair and impartial trial and was, therefore, not egregiously harmed. TEX. CODE CRIM. PROC. ANN. art. 36.19.

## V. CONCLUSION

Section 8.07(b) is the law applicable to this case and therefore subject to *sua sponte* submission. Appellant was not required to make an objection or request to have this instruction included in the jury charges. *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). The court of appeals was correct to conclude that the trial court erroneously failed to instruct the jury on Section 8.07(b). However, the court of appeals erred in concluding that the error resulted in egregious harm. We reverse the court of appeals and remand to the court of appeals to address the remaining issues.

Meyers, J.

Delivered: March 9, 2011

Publish