COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



JAVIER EGUADE,

§

§

Appellant,

§

v.

§

THE STATE OF TEXAS,

§

§

Appellee.

§

No. 08-15-00268-CR

Appeal from

409th District Court

of El Paso County, Texas

(TC # 20110D03949)

## **O P I N I O N**

Javier Eguade was indicted for three counts of aggravated sexual assault of a child (L.D.R.) after the juvenile court transferred the case to the 409th District Court. Count I alleged that Appellant intentionally and knowingly caused the penetration of L.D.R.'s sexual organ by means of the sexual organ of Appellant; Count II alleged that Appellant intentionally and knowingly caused the penetration of the anus of L.D.R by the means of the sexual organ of Appellant; and Count III alleged that Appellant intentionally or knowingly caused L.D.R.'s mouth to contact the sexual organ of Appellant. During trial, the State moved to dismiss Count II, because there was not enough evidence to support it. A jury found Appellant not guilty of Count I, but guilty of Count III. Appellant elected to have the trial court assess his punishment and the trial court honored the punishment agreement between Appellant and the State, sentencing him to ten years in the Texas Department of Criminal Justice Institutional Division,

probated for ten years. Appellant filed a motion for new trial which was overruled by operation of law.

Appellant now raises three issues on appeal. He argues: (1) the State was not authorized to indict and prosecute him on Count III because the jurisdiction to prosecute him was never transferred to a felony district court by the juvenile court in its transfer order; (2) the trial court committed egregious error by failing to *sua sponte* submit a Penal Code Section 8.07(a) instruction in its guilt-innocence charge to inform the jury that it had to find that Appellant was fourteen years or older in order to find him guilty of either Count I or Count III; and (3) he should be granted a new trial because the trial court misdirected the jury on the law by instructing it not to consider the State's abandonment of Count II or the lack of evidence supporting Count II in deliberating the merits of Count III. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

The Eguade and De La Rosa families lived next door to each other in the San Elizario community. Appellant's mother is L.D.R.'s godmother and according to L.D.R., the two families had a family-like relationship.

On January 31, 2010, when L.D.R. was in the fifth grade, she told her brother, Hector De La Rosa that Appellant had sexually abused her when she was getting ready to enter the first grade. Hector immediately told their mother, who called the police. El Paso Sheriff's Deputy Sergio Juarez responded to the call at the De La Rosa residence and created an initial report which he turned over to a detective for further investigation. On February 9, 2010, Detective Joe Zimmerly interviewed L.D.R. at a child advocacy center.

2

At the time of trial, L.D.R. was sixteen years old and a sophomore in high school. She testified that Appellant raped her when she was five years old, going into the first grade at Borrego Elementary, and her teacher during this time was Mrs. De Leon. L.D.R. related that the first time occurred at Appellant's house in his mother's bathroom. When L.D.R. went to use the bathroom, Appellant was at the door when she was finished. He touched her, pulled down his shorts, and inserted his penis into her vagina while she was lying on her back on the floor. While she and Appellant were in the bathroom, Appellant's sister knocked on the door and Appellant told L.D.R. to be quiet. When he left, he told her to stay in the bathroom for a while.

The next occasion occurred in the Eguade's hallway bathroom. Again, she went to the bathroom and Appellant was waiting for her at the door when she was finished. He put his penis in her vagina, and then he sat down on the toilet and forced L.D.R. to put her mouth on his penis by putting his hand on the back of her neck. She testified that she saw a white substance come out of his penis. L.D.R. never told anyone because once she learned that what had happened was wrong, she felt guilty and was afraid that the two families would part ways.

On cross-examination, L.D.R. testified that she felt pain, but did not remember whether she bled. One of the reasons she never told anyone was because Appellant made her feel as though it was her fault. Even after her mother learned of the abuse, L.D.R. did not speak extensively because she does not like talking about what happened. After she made her outcry, no other incidents occurred.

The State rested its case and moved to dismiss Count II given that there was no evidence regarding anal penetration. Appellant moved for directed verdicts on Counts I and III, which the trial court denied.

3

Mrs. De La Rosa testified as the first defense witness. On January 31, 2010, Deputy Juarez responded to her call and she informed him of L.D.R.'s outcry. Mrs. De La Rosa began taking L.D.R. to counseling because she was having emotional problems and difficulty at night. She did not recall informing law enforcement officials that L.D.R.'s abuse occurred during mutual cookouts with the Eguades. She also did not remember giving officers the five dates of occurrence for the abuse, but did recall that the two families spent significant time together, including traveling together.

On cross-examination, Mrs. De La Rosa explained that she had known the Eguade family for 25 years, and that before the abuse, the two families were extremely close. L.D.R. is shy, suffers from weight problems, and becomes very angry whenever she has to talk about the abuse. L.D.R.'s outcry made her feel helpless and angry. She then recalled that she did in fact give law enforcement the dates of abuse which were an approximation because the child was too young to give precise dates. Mrs. De La Rosa remembered that L.D.R. told her she was around five or six years old when the events at issue occurred.

Detective Gil, a twenty-one year veteran of the sheriff's department, testified that she took Mrs. De La Rosa's and Hector's statements in 2010 after L.D.R. made her outcry. She did not recall reading the statement back to Mrs. De La Rosa, but explained that Mrs. De La Rosa initialed each paragraph in her statement to verify its contents.

L.D.R.'s counselor, Martha Dominguez, testified that she had seen L.D.R. approximately nineteen times. She observed that L.D.R. was generally a happy person, and during counseling, Dominguez helped her focus on reducing the anxiety she experienced about having to testify. L.D.R. only opened up to her once concerning the abuse. Dominguez has thirty years of practice as a licensed social worker and has treated approximately three hundred sex-abuse victims. She

4

opined that family support is one the most important factors in how a child copes with sexual abuse. She also indicated that during her time with L.D.R., she never recanted her statement.

Mrs. Eguade testified that she was aware of the charges against her son and confirmed that he was fourteen years old at the time and L.D.R. was five years old. As L.D.R.'s godmother, she cared for L.D.R., but she never noticed that anything was bothering the child. On cross-examination, she minimized her family's relationship with the De La Rosas. They rarely went to each other's homes and when the De La Rosas did come over, they stayed outside. She acknowledged that L.D.R. had been at her home while Appellant was present. When Appellant was much younger, she supervised him but was unable to monitor him all of the time and it was impossible for her to know everything that he did outside of her presence. She acknowledged the seriousness of the charges and while she would do anything for her son, she would not lie.

Finally, Appellant testified. At the time of trial, he was twenty-five years old. He claimed that L.D.R. was lying, he would never abuse her, and he was never alone with her. Initially, Appellant attended Texas A&M University on scholarship, but he returned to El Paso after losing the scholarship due to low grades. He was placed on academic suspension at El Paso Community College and was finishing his engineering degree at The University of Texas at El Paso. He had lost two jobs and was unable to join the Air Force because of his pending charges.

## JURISDICTION OF THE DISTRICT COURT

In his first point of error, Appellant maintains that the order waiving juvenile court jurisdiction was defective and deprived the district court of jurisdiction over Count III. He has waived error by failing to object in the trial court. *See* TEX.R.APP.P. 33.1(a). Nothing in the record indicates Appellant filed a written motion objecting to the trial court's assumption of

5

jurisdiction, as required by Article 4.18(a) of the Texas Code of Criminal Procedure, which states:

> A claim that a district court or criminal district court does not have jurisdiction over a person because jurisdiction is exclusively in the juvenile court and that the juvenile court could not waive jurisdiction under Section 8.07(a), Penal Code, or did not waive jurisdiction under Section 8.07(b), Penal Code, must be made by written motion in bar of prosecution filed with the court in which criminal charges against the person are filed.

TEX.CODE CRIM.PROC.ANN. art. 4.18(a)(West Supp. 2016). Even had he properly preserved this issue, it is without merit. Appellant complains that the January 1, 2003, aggravated sexual assault offense of which he was convicted in Count III was not a criminal act encompassed within the juvenile court's transfer order.

It is well-settled that a juvenile court waives jurisdiction only with respect to conduct, and a criminal court has jurisdiction to adjudicate only the same conduct for which the juvenile court transferred jurisdiction. *Livar v. State*, 929 S.W.2d 573, 574 (Tex.App.--Fort Worth 1996, pet. ref'd); *Ex parte Allen*, 618 S.W.2d 357, 361 (Tex.Crim.App. 1981)(op. on reh'g). Appellant argues that the juvenile court waived its jurisdiction based on the five allegations that occurred in 2005 (June 10, July 16, September 9, November 12, and December 2) but that the jury was told it could convict Appellant based on 2003 allegations alleged in the indictment issued after juvenile jurisdiction was waived. He relies on *Ex parte Allen*, 618 S.W.2d 357, 361 (Tex.Crim.App. 1981)(op. on reh'g), for his claim that the State acquired a transfer order relating to one criminal act of a juvenile and then sought indictment for a separate criminal act allegedly committed by the same juvenile. However, the State may, in a criminal court, charge the juvenile with an offense that can be proven if it is based on conduct for which the juvenile court has ordered the juvenile transferred. *See Brosky v. State*, 915 S.W.2d 120, 126 (Tex.App.--Fort Worth 1996, pet. ref'd).

6

The State readily acknowledges that the date of the conduct alleged in the State's indictment is on or about January 1, 2003, and that it is different than any of the dates set out in the juvenile transfer record. It directs us to the Court of Criminal Appeals' decisions that it need not allege a specific date in an indictment. *Mitchell v. State*, 168 Tex.Crim. 606, 330 S.W.2d 459, 462 (1959); *Sledge v. State*, 953 S.W.2d 253, 256 (Tex.Crim.App. 1997). The "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period.[1] *Sanchez v. State*, 400 S.W.3d 595, 600 (Tex.Crim.App. 2013); *Sledge*, 953 S.W.2d at 256; *Scoggan v. State*, 799 S.W.2d 679, 680 n.3 (Tex.Crim.App. 1990)("The State is not bound by the date alleged in the indictment . . . so long as the date proved is a date anterior to the presentment of indictment and the crime's occurrence is not so remote as to be barred by limitation."); *Thomas v. State*, 753 S.W.2d 688, 692 (Tex.Crim.App. 1988)("Where an indictment alleges that some relevant event transpired 'on or about' a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory period of limitations.").

The indictment[2] alleged that the offense occurred on or about January 1, 2003, but all of the allegations in the record focus on acts that allegedly occurred in 2005.[3] This on or about language allows the State to prove a date other than the 2003 date as long as it is anterior to the

---

[1] The trial court instructed the jury that the relevant statute of limitations in this instance was ten years from L.D.R.'s eighteenth birthday.

[2] The indictment in this case was presented on September 14, 2011.

[3] Regarding Count III, the State was required to prove the single act of contact or penetration of L.D.R.'s mouth by Appellant's sexual organ. L.D.R. discussed an incident at Appellant's home in one of the bathrooms where he caused his sexual organ to penetrate her mouth. She was certain that at the time of the abuse, she was five years old and going into the first grade. She knew she was attending Borrego Elementary School and that her teacher was Mrs. De Leon. L.D.R.'s school records indicated that L.D.R. was in the first grade during the 2005-06 school years, a period of time when, based on her October 9, 1998, birthdate, L.D.R. would actually have been six or seven years old.

7

presentment of the indictment and within the statutory limitation period, which had not expired in this instance.

Moreover, courts remain cognizant of the difficulty children often have in remembering specific dates or ages, and that they frequently relate the time of the occurrence of an event to other significant dates or events, such as holidays, or seasons, or the grade they are in at school at the time of the event, as L.D.R. did in this instance. *See, e.g., Michell v. State*, 381 S.W.3d 554, 561 (Tex.App.--Eastland 2012, no pet.)(child victim could not give specific dates of instances of sexual abuse, but was able to give details of where they took place, the grade she was in, or what the season of the year was at the time of the abuse); *see also, e.g., Lane v. State*, 357 S.W.3d 770, 773-74 (Tex.App.--Houston [14th Dist.] 2011, pet. ref'd); *Smith v. State*, 340 S.W.3d 41, 48-49 (Tex.App.--Houston [1st Dist.] 2011, no pet.).

Appellant has failed to show that the offense for which he was prosecuted and convicted, as alleged in Count III of the indictment, did not arise out the same conduct for which the juvenile court waived and transferred its jurisdiction. The "on or about" allegations in both the juvenile court's certification proceedings and in the indictment cover the time of the occurrence of the offense described by L.D.R. in her testimony at trial. Because Appellant has not demonstrated any jurisdictional defect to his prosecution and conviction, we overrule Issue One.

## CHARGE ERROR

In Appellant's second issue, he complains that the trial court committed erred by failing to instruct the jury that he could not be convicted for conduct committed before his fourteenth birthday pursuant to Section 8.07(a)(6) of the Texas Penal Code. We disagree.

Appellate courts review charge error under a two-pronged test. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). First, we must determine whether error exists; second,

8

if error exists, we then must evaluate the harm caused by the error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). The degree of harm required for reversal depends on whether the error was preserved at trial. *Almanza*, 686 S.W.2d at 171; *Neal v. State*, 256 S.W.3d 264, 278 (Tex.Crim.App. 2008). If the error was preserved, we review for "some harm" whereas unpreserved errors are reversible only for egregious harm. *Almanza*, 686 S.W.2d at 171. Appellant acknowledges that he did not object at trial. Therefore, we reverse only for egregious harm. *Alamanza*, 686 S.W.2d at 171. An egregious harm determination must be based on a finding of action rather than theoretical harm. *See Cosio v. State*, 353 S.W.3d 766, 777 (Tex.Crim.App. 2010). For harm to be egregious, the error must have affected the very basis of the case, deprived Appellant of a valuable right, or vitally affected a defensive theory. *Id.*

Article 36.14 of the Texas Code of Criminal Procedure details the requirements and procedures for the delivery of the court's charge to the jury. TEX.CODE CRIM.PROC.ANN. art. 36.14 (West 2007). "[The] judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." *Id.* A judge has a duty to instruct the jury on the law applicable to the case at hand even when defense counsel fails to object to inclusions or exclusions in the charge. *Taylor v. State*, 332 S.W.3d 483, 486 (Tex.Crim.App. 2011). Appellant contends that Section 8.07(a)(6) of the Texas Penal Code was applicable. Section 8.07(a) provides that a person may not be prosecuted for or convicted of any offense that the person committed when younger than fifteen years of age. *See* TEX.PEN.CODE ANN. § 8.07(a)(West Supp. 2016). However, the exception contained in Section 8.07(a)(6) permits a person fourteen or older to be convicted if the person committed a first-degree felony and the juvenile is transferred pursuant to Section 54.02 of the Texas Family Code. *Id.* at § 8.07(a)(6). Appellant asserts that the trial court committed egregious error by failing to include a Section

9

8.07(a)(6) instruction informing the jury that it was not permitted to convict Appellant if it did not find that he was fourteen years or older when the offenses were committed. He relies upon *Taylor v. State*, 332 S.W.3d 483, 486 (Tex.Crim.App. 2011), to support his argument. The defendant in *Taylor* was charged by three separate indictments with aggravated sexual assault. *Id.* at 485. The complainant testified to sexually assaultive conduct committed by the defendant both before and after the defendant's seventeenth birthday. *Id.* at 485-86. Although the indictments alleged the offenses were committed on dates that followed the defendant's seventeenth birthday, the charge instructed the jurors that the State was not bound by the specific dates alleged and that they could convict the defendant if the offenses were committed at any time within the period of limitations. *Id.* at 487-88. Further, the charge did not contain a Section 8.07(b) instruction; that is, the jurors were not told that the defendant could not be convicted for conduct committed before his seventeenth birthday. *Id.* at 486; *see* TEX.PEN.CODE ANN. § 8.07(b).

The court of criminal appeals found that, under the circumstances, Section 8.07(b) was law applicable to the case on which the trial court had a duty to instruct the jury even in the absence of a request or objection by the defendant. *Taylor*, 332 S.W.3d at 488-49. The *Taylor* court concluded "that a jury charge is erroneous if it presents the jury with a much broader chronological perimeter than is permitted by law." *Id.* at 488. The court thus held that the absence of a Section 8.07(b) instruction, when combined with evidence of the defendant's conduct while he was a juvenile and the instruction that a conviction could be based on any conduct within the limitations period, "resulted in inaccurate charges that omitted an important portion of the law applicable to the case." *Id.* at 489.

10

In response, the State directs our attention to *Randall v. State*, Nos. 09-13-00322-CR, 09-13-00323-CR, 09-13-00324-CR, 09-13-00325-CR, 2015 WL 1360115, at *1 (Tex.App.--Beaumont Mar. 25, 2015, no pet.)(not designation for publication), for comparison. In *Randall*, the appellant similarly argued that by failing to instruct the jury that he could not be prosecuted or convicted for any offenses that he committed before attaining the age of fourteen, the jury was improperly allowed to use the evidence of his delinquent conduct to find him guilty of the crimes with which he was charged in the indictment. *Id.* The jury in *Randall* also heard testimony that appellant engaged in sexual misconduct before his fourteenth birthday and the Beaumont court held it was error for the trial court to have omitted the 8.07(a)(6) instruction. *Id.* at *2. However, after reviewing the testimony, the arguments of counsel, and the charge as a whole, the *Randall* court ultimately held that while charge error occurred, the trial court's failure to include the instruction did not cause any egregious harm because all of the evidence and other information in the record made it clear to the jury that it was required to find that the conduct relevant to the crimes occurred after the appellant turned fourteen years old. *Id.* at *3.

We find both *Taylor* and *Randall* distinguishable. In *Taylor*, the absence of a Section 8.07(b) instruction was "problematic" where the jury "received evidence upon which they were statutorily prohibited from convicting Appellant," i.e., "repeated testimony regarding Appellant's pre-seventeen conduct." *Id.* at 487. Similarly, in *Randall*, there was also extensive evidence presented to jury that appellant engaged in sexual misconduct prior to his fourteenth birthday. *Randall*, 2015 WL 1360115, at *2.

No such evidence exists here. L.D.R.'s testimony concerning her abuse focused on two incidents that she was certain occurred when she entered the first grade at Borrego Elementary and her teacher was Mrs. DeLeon. Her school records established that this time period coincided

with the 2005-06 school year, placing Appellant over fourteen years old based on his November 6, 1989, birthdate. *See*Several other witnesses, including Appellant himself, testified that at the time of the alleged offenses, Appellant was fourteen or fifteen years old. Moreover, even though L.D.R. testified that she was five years old when the abuse occurred, her testimony that she was entering the first grade, coupled with her school records, reflect that her age at the time of the incidents would be closer to six years old instead of five. In fact, Appellant's entire defense focuses on incidents already detailed in the juvenile transfer order and that had occurred after Appellant had already turned fourteen years of age.[4]

Additionally, he trial court was aware that Appellant was only prepared to defend against the 2005 allegations set out in the juvenile transfer order and contained in the State's file because he initially objected to the lack of information contained in the State's file regarding a 2003 act detailed in the State's notice of extraneous offenses. Appellant's counsel informed the trial court that after reviewing the State's file, only allegations from 2005 forward were at issue. The State confirmed that it had no information regarding any 2003 allegations and no intentions of introducing such evidence. The State again assured the trial court that its case would focus on the acts that occurred in 2005 despite the 2003 indictment date. Accordingly, because no evidence supports a rational inference that Appellant was not fourteen years old at the time of offenses, the trial court did not err when it failed to include a Section 8.07(a)(6) instruction to the jury. We overrule Issue Two.

## JURY ARGUMENT

In his third and final issue, Appellant maintains that he should be granted a new trial because the trial court prevented his defense counsel from arguing to the jury the evidentiary

---

[4] The State points out that Appellant was born on November 6, 1989, and during the 2005-06 school year, he would have been fifteen and sixteen years old. L.D.R. was born on October 9, 1998, and would have been six and seven years old during the 2005-06 school year.

significance of the State's abandonment of Count II of the indictment during closing arguments. We disagree.

We review a trial court's ruling on the State's objection to appellant's jury argument for abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex.App.--Houston [14th Dist.] 2012, pet. ref'd); *Davis v. State*, 329 S.W.3d 798, 825 (Tex.Crim.App. 2010). Although the trial court has broad discretion in controlling the scope of closing argument, it may not prevent defense counsel from making a point essential to the defense. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex.App.--El Paso 2004, no pet.). Prohibiting counsel from making such a jury argument constitutes denial of the defendant's right to counsel if the defendant was entitled to make the argument. *Davis*, 329 S.W.3d at 825. Jury arguments that misstate the law or is contrary to the court's jury charge is improper. *See Thomas v. State*, 336 S.W.3d 703, 713 (Tex.App.--Houston [1st Dist.] 2010, pet. ref'd); *Peak v. State*, 57 S.W.3d 14, 18 (Tex.App.--Houston [14th Dist.] 2001, no pet.). Proper jury argument falls into four specific categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument by opposing counsel; and (4) plea for law enforcement. *Sliva v. State*, 936 S.W.2d 721, 726 (Tex.App.--El Paso 1996, pet. ref'd); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App. 1973).

As we have noted, the State moved to dismiss Count II because there was no testimony presented at trial regarding anal penetration. During closing arguments, defense counsel argued that L.D.R.'s testimony was not credible because she failed to testify regarding anal penetration. As a result, Count II was not before the jury, to which the State objected. Specifically, the following dialogue occurred between the State and defense counsel:

> [Defense counsel]: She stated to you that she does not remember if she bled. She does not remember if she cried. That would have been as to the first incident that she testified. And the second time around she does not remember if she experienced pain. But you will recall when this case began [it] began with three

13

counts. Remember that. It began with the allegations that there had been oral sex, the allegation that there had been vaginal sex and the allegation there had been anal sex. And what happened? I don't know if you were playing [sic] close attention.

[State]: Objection, Your Honor. This is improper. This isn't part of the jury charge.

[Trial Court]: Sustained. Let's have a closing argument with regard to the jury charge, Mr. Estrada.

[Defense Counsel]: When you heard her testimony she testified about oral sex and she testified about vaginal sex. I suppose that she just forgot--

[State]: Objection, Your Honor. Same objection.

[Defense Counsel]: The bottom line is now that we are here discussing what is in the jury charge that it says count one and you can look on the page for yourself. It says count one and count three. There is no count two to argue about.

[State]: Objection.

[Trial Court]: Mr. Estrada, get off this subject.

The State correctly points out that the purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may "arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence." *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App. 1980). It is trial counsel's duty to confine arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence are therefore improper. *See Alejandro*, 493 S.W.2d at 231; *Todd v. State*, 598 S.W.2d 286, 296 (Tex.Crim.App. 1980). While questioning the credibility of a witness is not error, as it involves a reasonable deduction from the evidence, asking the jury to consider evidence clearly outside the record and not included in the charge, is improper.[5] The trial court

---

[5] It is well-settled that the State may, with the consent of the trial court dismiss, waive or abandon a portion of the indictment. *Ex parte Preston*, 833 S.W.2d 515, 517 (Tex.Crim.App. 1992); *Woods v. State*, 211 S.W.2d 210, 211 (Tex.Crim.App. 1948). Once the State dismissed Count II at the close of its case-in-chief, it was no longer included in the jury charge for the jury to consider.

did not abuse its discretion in preventing Appellant's trial counsel from discussing Count II, which was no longer part of the charge, as a means to suggest that L.D.R. fabricated the allegations that constitute Count III. We overrule Issue Three and affirm the judgment of the trial court.

July 31, 2017

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

(Do Not Publish)