

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00173-CR

TORY DESHUNE BYRD                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY
### TRIAL COURT NO. 57,088-B

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Tory Deshune Byrd of intentionally evading arrest or detention with a prior conviction of the same, and the trial court sentenced him to twelve years' confinement. In a single issue, Byrd contends that he suffered egregious harm because the deliberation instruction portion of

----------

[1]See Tex. R. App. P. 47.4.

the jury charge contained grammatical errors instructing the presiding juror to sign only "one of the forms attached hereto" for "each count" even though only one form was attached and Byrd was charged with only one count. Byrd alleges that the improper pluralization of "form" and "count" led the jury to erroneously conclude that he was charged with multiple counts, which might have led the jury to erroneously convict him based solely on his prior conviction. Byrd did not object to the jury charge. Because the record on appeal fails to reflect that Byrd suffered egregious harm from the unobjected-to alleged charge error, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2016, at approximately 11:45 a.m., Wichita Falls Police Officer Deanna Tofte responded to a call at a residence in Wichita County, Texas, regarding a disturbance and the possible commission of a crime. At trial, Officer Tofte testified that when she arrived at the residence, she was informed that the two people involved in the disturbance had left on foot and were traveling north. Officer Tofte was apprised that the two individuals were black males and that one man was wearing a blue shirt and gray pants and the other man was wearing a gray and blue flannel shirt. Through a radio dispatch, Officer Tofte advised other officers of the direction that the two men were travelling, when they were last seen, what they were wearing, and of her concerns for officer safety.

At the time of Officer Tofte's radio call, Patrol Officer Chad Nelson was on patrol in the area, driving a "Crown Vic style" marked patrol car, and wearing his

2

police uniform with a badge affixed to his chest. At trial, Officer Nelson testified that he received a dispatch that the two suspects had left the residence and were traveling north on foot toward a nearby bike trail. Officer Nelson testified that the dispatch described the suspects as two black males, one wearing a blue shirt and gray pants and the other wearing a blue and gray flannel shirt.

Officer Nelson arrived at the bike trail and drove his patrol car over the curb and through the grass toward the trail and bridge. There was a creek with a rocky bank below the bridge. Upon reaching the bike path, Officer Nelson saw a black male wearing a blue shirt and gray pants, standing on the north side of the creek. When Officer Nelson drove his patrol car over a bridge to the north side of the creek, he testified that the man crossed back over the creek to the south side. Officer Nelson put the patrol car in reverse and drove back to the south side of the creek. Officer Nelson testified that he then saw a second black male wearing a blue and gray flannel shirt. Officer Nelson did not turn on his lights or engage the patrol car's intercom system to communicate with the men.

Officer Nelson testified that he stepped out of the patrol car and yelled to the two men, "Stop, Police; Just stay where you are." Officer Nelson estimated that the two men were fifty yards away from him when he yelled for them to stop. Officer Nelson testified that both men looked at him and yelled something that he could not understand. Officer Nelson testified that the men then ran north back across the creek bed and that he pursued them on foot. Officer Nelson testified that after a short pursuit, a second Wichita Falls Police Officer, Dale Finnegan,

3

approached the two men from a different direction. Officer Finnegan yelled commands to the two men, and the two men laid down on their chests.[2] Officer Nelson testified that the two men had travelled approximately two-tenths of a mile from the time he first yelled at them to stop until the time that they were detained.

The State indicted Byrd for intentionally evading arrest or detention from Officer Nelson.[3] The indictment alleged a previous conviction for evading arrest or detention,[4] as well as previous convictions for felony possession of a controlled substance and felony assault of public servant.

On May 9, 2017, the trial court presided over a trial on the merits. After the State and Byrd rested, the trial court held a charge conference, at which Byrd made no objections. The jury deliberated and returned a verdict of guilty, finding Byrd guilty of the offense of evading arrest or detention with a prior conviction.

In this appeal, Byrd raises a single issue challenging the following portion of the jury charge that concerned deliberation instructions:

> Your verdict must be unanimous, and after you have arrived at your verdict, you may use *one of the forms* attached hereto by having your presiding juror sign his or her name to the particular form that

---

[2]Officer Finnegan testified that he had pointed his AR-15 and moved toward the two men while he was giving commands. Officer Finnegan testified that although the two men did not immediately comply with his commands, they eventually complied and laid down on their chests.

[3]*See* Tex. Penal Code Ann. § 38.04(b) (West 2016).

[4]Byrd had previously been convicted on May 2, 2014, of evading arrest or detention with a previous conviction.

4

conforms to your verdict, *but in no event shall he or she sign more than one of such forms as to each count.* [emphasis added]

Byrd contends that by instructing the jury regarding multiple "forms" and "each count," the charge improperly suggested there were multiple counts and forms when, in fact, this case only concerned one count and one form. Byrd contends that this likely confused the jury because Byrd's prior conviction for evading arrest or detention was an element of the offense that he was charged with in the present indictment. Moreover, the indictment includes both evading arrest charges, as well as two other convictions. Thus, Byrd asserts that the jury charge was in error, egregiously harmed him, and warrants reversal and either acquittal or new trial.

## III. STANDARD OF REVIEW

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.* Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm is fact specific and must be performed on

a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. We address each of the four factors articulated in *Almanza*. *See id.* at 171; *Valencia v. State*, No. 02-14-00406-CR, 2015 WL 7820384, at *3 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op., not designated for publication).

## IV. ANALYSIS

The first question we must resolve is whether error actually occurred. Although the State minimizes the error by labeling it "typographical," the State does not disagree with Byrd's contention that the jury charge does, in fact, improperly pluralize "form" and "count." Therefore, it is undisputed that the jury charge contains error, however minute.

6

The next question we must resolve is whether the error was preserved. The State asserts that Byrd made no objection at the charge conference. Our review of the record confirms that Byrd made no objection at the charge conference. Therefore, the error warrants reversal only if it resulted in egregious harm. *See Almanza*, 686 S.W.2d at 171.

To determine whether the error resulted in an egregious harm, we now consider the four *Almanza* factors.

## A. The Entire Jury Charge

"The purpose of the trial judge's jury charge is to instruct the jurors on all of the law that is applicable to the case." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). "Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense." *Id.* (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)).

A jury charge contains an abstract paragraph and an application paragraph. The "abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)). "The application paragraph is what explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013).

7

The relevant portion of the application paragraph here reads as follows:

[I]f you believe from the evidence beyond a reasonable doubt that the defendant, Tory Byrd, on or about the 13th day of January, 2016, in Wichita County, Texas did then and there intentionally flee from Chad Nelson, a person the defendant knew was a peace officer who was attempting lawfully to arrest or detain the defendant, and that, prior to the commission of the aforesaid offense, on May 2, 2014, in case number 53,484-B in the 78th District Court of Wichita County, Texas, the defendant was convicted under Section 38.04, Penal Code, of the offense of Evading Arrest Detention with Previous Conviction, you will find the defendant guilty of the offense of Evading Arrest or Detention with Previous Conviction as alleged in the indictment . . . .

Byrd does not claim error exists in the application paragraph of the jury charge. Instead, he claims error exists only in the deliberation instruction portion of the jury charge. And generally, when considering the entire jury charge in an *Almanza* analysis, errors in the abstract or deliberation instructions do not constitute egregious harm. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."). Under this factor, the error in the jury charge does not rise to the level of egregious harm.

**B. The State of the Evidence**

Looking to the state of the evidence, there was ample evidence to support the jury's finding that Byrd evaded the lawful arrest or detention of Officer Nelson on January 13, 2016. The testimony of Officer Nelson demonstrates that he yelled at Byrd to stop; but Byrd yelled something back and ran in the opposite direction. Further, the State's fingerprint expert, Annette Wang, testified at trial

that Byrd was the same person who had been previously convicted for evading arrest or detention on May 2, 2014. Therefore, considering the error in the deliberation paragraph of the jury charge in light of the state of the evidence at trial, Byrd did not suffer egregious harm.

## C. Argument of Counsel

Looking to the arguments of counsel, Byrd's counsel made no argument concerning the May 2, 2014 conviction. The prosecutor mentioned the prior evading arrest or detention conviction three times: in his opening statement, in offering the State's exhibit number 1, and in his closing argument. In fact, in the prosecutor's closing argument, he specifically referred to the May 2, 2014 conviction as supporting only a specific element of the offense for which Byrd was being tried. Therefore, the prosecutor's closing argument likely clarified any confusion that the error in the deliberation instruction might have caused and supports that Byrd did not suffer egregious harm. *See Craaybeek v. State*, No. 02-15-00454-CR, 2016 WL 4491225, at *3 (Tex. App.—Fort Worth Aug. 26, 2016, pet ref'd) (mem. op., not designated for publication) (holding no egregious harm occurred when the prosecutor's closing argument actually clarified an erroneous definition in jury charge).

## D. The Trial as a Whole

Looking to the other relevant information in the record as a whole, during voir dire, the prosecutor clearly stated that the prior conviction was only a part of the State's case against Byrd:

We would need to prove that on or about January 13, 2016, here in Wichita County, Tory Deshune Byrd did then and there intentionally flee from Chad Nelson, a person the defendant knew was a peace officer who was attempting lawfully to arrest or detain the defendant, *and that he had a prior conviction for evading arrest/detention.* [emphasis added]

Shortly thereafter, the prosecutor reaffirmed that the prior conviction was only part of the State's case against Byrd and even cautioned that the prior conviction did not establish Byrd's guilt for the instant offense:

[I]n order to get into this courtroom, we need to prove that the defendant has a previous conviction for evading arrest. Now, just because someone has been convicted of something at one point in their life does not mean they automatically did something else later on, right? The State needs to be held to its burden of proof in that way.

From the outset of trial, the State clearly identified the prior conviction for evading arrest or detention as being merely an element or part of Byrd's instant offense, and that the existence of the prior conviction alone did not mean that the State had proved Byrd's guilt of the instant offense. Thus, the record as a whole does not show that the grammatical error in the deliberation instructions caused Byrd to suffer egregious harm.

Having examined the four *Almanza* factors and having concluded that none of them weigh in favor of egregious harm, we hold that the grammatical error in the deliberation instruction portion of the jury charge did not deprive Byrd of a valuable right, vitally affect his defensive theory, or make the case for conviction clearly and significantly more persuasive. *See Almanza*, 686 S.W.2d at 171; *Taylor*, 332 S.W.3d at 490.

## V.  CONCLUSION

Having held that the error in the deliberation instruction in the jury charge was not an egregious harm, we overrule Byrd's single issue on appeal and affirm the judgment of the trial court.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 1, 2018