

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00108-CR

ARTHUR ROBERTS                                                APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1333424D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Arthur Roberts appeals his conviction for aggravated sexual assault.[2] In one point, he contends that the trial court reversibly erred by providing the jury with a definition of "consent" that did not apply to his offense.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.021(a)(1)(A)(i), (2)(A)(iv) (West Supp. 2017).

We conclude that any such error did not cause harm justifying reversal, and we therefore affirm the trial court's judgment.

**Background**

According to testimony by L.G. (Lacy),[3] one day in February 2013, she was walking to a laundromat when a man offered her a ride. She accepted the ride and washed some clothes at the laundromat. After she and the man left the laundromat, they bought marijuana, and she went with him to his house while intending to smoke the marijuana there. They went into a bedroom, and Lacy smoked marijuana.

The man asked to use Lacy's cell phone. When she gave him the phone, she saw that he was holding a knife. He told her that if she did not make a noise or scream, she would leave the house alive. He then tied her hands with a jump rope; told her to go to a closet; followed her there; took her shirt and pants off; told her to say his name, "King Aurtorius II," repeatedly; put a finger inside her anus multiple times; and licked her anus.

Lacy feared for her life. She began to fight the man. An elderly lady entered the room, gave Lacy some clothes, and let her out of the house. While trying to find someone who had a phone, Lacy ran near a school. A bystander saw her; she was bleeding and looked distressed and scared. The bystander

---

[3]To preserve Lacy's anonymity, we use a pseudonym. *See McClendon v. State,* 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

2

called 9-1-1, and during the call, Lacy told the dispatcher that she had been raped.

When a responding officer arrived at the school, Lacy was pacing and crying. The officer noticed that she had a cut near her left eye and red marks around her wrists. Lacy told the officer about the events leading to the sexual assault and details of the crime. The officer believed Lacy's account and took her to a hospital for a sexual assault examination.

A sexual assault nurse examiner, Violet Gorman, noticed that Lacy was injured on an eyelid, on her wrists, on her neck, on her left hip, and on her left leg. Lacy told Gorman details of the sexual assault. Gorman found injuries on Lacy's anal area. While Lacy was at the hospital, another officer arrived there; took photos of Lacy's injuries; observed her "[k]ind of broken" demeanor; and collected evidence, including her blood-stained shirt.

Lacy later identified the house at which Roberts had sexually assaulted her and notified the police. The police executed a search warrant for that house and used a Q-Tip to swab a wood surface that appeared to have blood on it. At the house, the police found a business card that referred to "King Aurtorius II," a suitcase with paperwork bearing Lacy's name, her purse, and her laundry bag. Through a photo lineup, Lacy identified Roberts as her assailant. A forensic DNA analyst matched the blood found on the wood surface in Roberts's house to Lacy. The analyst also determined that Roberts could not be excluded as a

contributor to DNA found on swabs of Lacy's anus and her breasts following the assault.

A grand jury indicted Roberts for committing aggravated sexual assault. The indictment alleged that he had intentionally or knowingly caused the penetration of Lacy's anus by inserting his finger without her consent. The indictment further alleged that he had compelled Lacy to submit to his sexual assault by using or threatening violent force against her with a knife, which qualified as a deadly weapon. Roberts pleaded not guilty and chose the jury to assess his punishment in the event of his conviction.

After the jury received the parties' evidence and arguments, it found Roberts guilty. The jury then heard more evidence and arguments concerning his punishment and assessed confinement for life. The trial court sentenced him accordingly, and he brought this appeal.

**Alleged Jury Charge Error**

In his only point, Roberts contends that the trial court reversibly erred by providing the jury with a general definition of "consent" from section 1.07 of the penal code in addition to the definition of "consent" from section 22.011 of the penal code that more specifically applies to sexual assaults. *See* Tex. Penal Code Ann. § 1.07(a)(11) (West Supp. 2017) (defining "consent" as "assent in fact, whether express or apparent"), § 22.011(b) (West Supp. 2017) (listing scenarios by which the State may prove that a defendant engages in a sexual act without a victim's consent). Roberts contends that by including the general

4

definition in the guilt-innocence jury charge, the trial court lessened the State's burden of proof.

Concerning the issue of consent, the unobjected-to guilt-innocence jury charge stated,

> A sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force or violence; or if the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat.[4]
>
> A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the anus of another person by any means, without that person's consent, and the person uses or exhibits a deadly weapon in the course of the same criminal episode.
>
> . . . .
>
> "Consent" means assent in fact, whether express or apparent.
>
> . . . .
>
> Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Arthur Roberts, . . . did intentionally or knowingly cause the penetration of the anus of [Lacy] (a pseudonym) by inserting Defendant's finger in the anus of [Lacy] (a pseudonym) *without the consent of [Lacy] (a pseudonym) by compelling [Lacy] (a pseudonym) to submit or participate by the use of physical force or violence or by threatening to use force or violence against [Lacy] (a pseudonym) and [Lacy] (a pseudonym) believed that the Defendant had the present ability to execute said threat*, and the Defendant used or exhibited a deadly weapon, to-wit:  a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, in the course of the same criminal episode,

[4]This language tracks provisions within section 22.011 concerning how a defendant may commit a sexual act without a victim's consent.  *See* Tex. Penal Code Ann. § 22.011(b)(1)–(2).

5

then you will find the Defendant guilty of the offense of aggravated sexual assault as charged in the Indictment. [Emphasis added.]

If error occurred in a jury charge, whether it was preserved determines the degree of harm required for reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm must be performed on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172).

Assuming, without deciding, that the trial court erred by including section 1.07's definition of consent in the abstract portion of the jury charge, we conclude that the error did not cause egregious harm justifying reversal.[5] *See Nava*, 415

---

[5]An error analysis is not required when a harm analysis is dispositive. *See Wooten v. State*, 400 S.W.3d 601, 607 (Tex. Crim. App. 2013) ("Finding our harm analysis thus dispositive, we need not address whether the trial court did, in fact, err not to include the instruction."); *see also Quigley v. State*, No. 02-15-00441-CR, 2017 WL 930066, at *11 (Tex. App.—Fort Worth Mar. 9, 2017, no pet.) (mem. op., not designated for publication) ("We do not decide whether the

S.W.3d at 298. The application paragraph is the jury charge's "heart and soul." *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012). "It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). We look at the "wording of the application paragraph to determine whether the jury was correctly instructed in accordance with the indictment and also what the jury likely relied upon in arriving at its verdict." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013); *see Lopez v. State*, 493 S.W.3d 126, 136 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (reiterating that the application paragraph tells the jury how to apply the law to the facts of the case), *cert. denied*, 137 S. Ct. 1076 (2017).

Thus, the court of criminal appeals has held that generally, error in the abstract portion of a jury charge that is not present in the application paragraph is not egregiously harmful. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."), *cert. denied*, 529 U.S. 1102 (2000); *Plata v. State*, 926 S.W.2d 300, 302–03 (Tex. Crim. App. 1996) ("The inclusion of a merely superfluous abstraction . . . never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs."),

murder instruction in the abstract portion of the charge was erroneous because we conclude that even assuming it was, Quigley was not egregiously harmed.").

7

*overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997); *see also Keith v. State*, No. 09-16-00166-CR, 2017 WL 6210865, at *10 (Tex. App.—Beaumont Dec. 6, 2017, no pet. h.) (mem. op., not designated for publication) (following *Medina*); *Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.— Austin 2013, pet. ref'd) ("Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious."); *Bazanes v. State*, 310 S.W.3d 32, 39 (Tex. App.—Fort Worth 2010, pet. ref'd) ("Because the application paragraph correctly instructed the jury on the elements of the offense of sexual contact as charged in Count 3 of the indictment, we hold that Bazanes was not egregiously harmed by any error in the definition of sexual contact.").

The record does not provide any justification for departing from this general rule here.[6] The trial court's guilt-innocence jury charge, although containing an allegedly incorrect or superfluous definition of "consent" in the abstract portion, also included the correct definition of that term in the abstract portion and included only the correct definition in the application portion, as we have emphasized through italics above. Nothing in the record suggests that the jury did not properly apply the application paragraph. Therefore, we conclude

---

[6]We note, for example, that the jury sent several notes to the trial court during deliberations, and none of them concerned the jury charge's provisions on consent.

that any error in including section 1.07's definition of consent in the abstract portion of the charge was not egregiously harmful and was not reversible. *See Medina*, 7 S.W.3d at 640; *Bazanes*, 310 S.W.3d at 39. We overrule Roberts's sole point.

## Conclusion

Having overruled Roberts's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL: BIRDWELL, GABRIEL, and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 12, 2018