**Opinion issued December 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00659-CR

———————————

**JASON RYAN JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 18-CR-2901**

## MEMORANDUM OPINION

Jason Ryan Jackson was convicted of indecency with a child by exposure, a third-degree felony. *See* TEX. PENAL CODE. § 21.11(a)(2)(A), (d). He was sentenced to 10 years of community supervision with 180 days in county jail as a condition. In

his sole issue on appeal, he contends that he suffered egregious harm as a result of an error in the jury charge. We affirm.

## Background

While standing in a checkout line at a store, Jackson allegedly exposed his penis in front of a minor child, later identified as E.M., who was eleven years old at the time. Jackson was arrested and charged by indictment with indecency with a child by exposure. *See* TEX. PENAL CODE § 22.11(a)(2)(A). He pleaded not guilty and proceeded to a jury trial.

Four witnesses testified at trial. Herlinda Plascencia testified that she was the cashier at the store in Bacliff and was working on the day of the incident. She testified that she initially waited on Jackson and a woman. They did not have enough money to complete their transaction, and they left the store. When Jackson returned alone moments later, Plascencia was assisting another customer at the register, a young girl, later identified as E.M. Plascencia knew that E.M. was a minor but she did not know her age. Jackson got in line after E.M. He seemed nervous and had his hands next to his trouser zipper. At first, the zipper was closed, but when Plascencia looked up and toward Jackson, his zipper was open. Jackson was touching himself, and Plascencia could see part of his penis. She alerted another employee to call the police. Plascencia identified Jackson in court as the man who exposed himself.

2

The jury watched a duly-authenticated surveillance video of the encounter. In the video, Jackson and a woman are seen checking out together at the register. They appear to be purchasing a soda and one other item. They leave the store, then Jackson returns alone. He walks up behind a young girl who is checking out. At first, he is on her right side, between the register and the exit. He then moves behind her, positioning himself in line at the register, though he does not have any items to purchase. The entire time he remains close to the young girl and has his hands near the zipper of his shorts. The video shows Jackson unzipping his shorts with his hands near his genitals. After Plascencia places the young girl's items in a bag, she notices Jackson exposing himself. The video also shows Jackson leaving the store as store workers gesture at him. The cashier and another worker from the store stay with the young girl, appearing to comfort her.

Elva Sortel testified that she was the assistant manager at the store in Bacliff. On the day of the incident, she saw E.M., who is a regular customer in the store. Sortel believed E.M. was about ten or eleven years old. While E.M. was shopping, Sortel saw Jackson and a woman shopping together in the store. She noticed the woman because she was lying down in the makeup aisle. When the couple went to pay at the register, the woman was "hyper," and Sortel felt something was wrong. Sortel watched the couple and took a photo of their car because they were acting strangely. She suspected they might steal something.

Sortel testified that Jackson and the woman left the store because they did not have enough money to pay. When Jackson returned, he was next in line after E.M. Sortel did not see Jackson expose himself. Plascencia called Sortel over to her and was acting excited as if something had happened. Plascencia told Sortel to call the police because Jackson had exposed his "private parts." Jackson left the store and drove away. On cross examination, Sortel said that she told an officer that she had chased Jackson outside.

Lieutenant S. Lozica of the Galveston County Sheriff's Office investigated the incident. He obtained surveillance footage from the store. He met with the manager and asked E.M.'s mother to take her daughter to the Children's Assessment Center for an interview. He watched the interview through closed circuit television. Lieutenant Lozica testified that, at the time of the interview, E.M. was eleven years old and in special education classes at school. He also testified regarding the difference between indecent exposure, a misdemeanor, and indecency with a child by exposure, a felony.

E.M. testified that she was currently twelve years old, and she lived near the store. She liked to go to the store to buy toys and fake fingernails. On the day of the incident, she rode her bike alone to the store. She testified that a car followed her to the store, and a man in the car followed her inside. She identified the man in court as Jackson. Jackson was not near her while she was shopping, but when she went to

4

the register, he was behind her. He told her "you don't need fake nails." E.M. testified that suddenly, the cashier told someone else to call the police. E.M. saw Jackson, very close next to her, with his pants unzipped and his "private part" exposed to her. E.M. heard the cashier say, "Edma, call the police!" Jackson placed a quarter on the counter and left the store. She waited for the police because she was scared.

Jackson did not call any witnesses. After deliberation, the jury found Jackson guilty of indecency with a child by exposure. The jury assessed punishment at five years in prison but recommended community supervision. The trial court assessed 10 years' community supervision with 180 days' county jail as a condition.

## Jury Charge

On appeal, Jackson contends that the jury charge was erroneous because it did not include the definition of a mental state for one of the charges submitted to the jury. Specifically, Jackson contends that the charge did not instruct the jury on the definition of "reckless" as it pertained to the lesser-included charge of indecent exposure. Jackson argues that he was egregiously harmed by the omission because, had the jury been instructed on the definition of "reckless," the jury could have found him guilty of indecent exposure. The State responds that even if there was error, it does not require reversal because it was not egregiously harmful.

5

## A.  Standard of Review

We review alleged charge error by first determining whether error exists in the charge. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). "If error exists, we then analyze the harm resulting from the error" to determine whether reversal is required. *Id.* In determining harm, we apply "separate standards of review depending on whether the defendant timely objected to the jury instructions." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. 2016) (applying *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Because Jackson failed to object at trial to the jury charge, we will reverse only if the error was "so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171).

## B.  The Jury Charge as Submitted to the Jury

The jury charge instructed that Jackson had been indicted for indecency with a child by exposure and defined the crime as follows:

> Our law provides that a person commits an offense if, with a child younger than seventeen (17) years of age and not the person's spouse, whether the child is of the same or opposite sex, with the intent to arouse or gratify the sexual desire of any person, the person exposes any part of the person's genitals knowing the child present.

The charge also instructed the jury that it could consider the lesser offense of indecent exposure. The charge defined that crime as:

6

Our law provides that a person commits the offense of Indecent Exposure if he exposes any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act.

The only definitions of applicable mental states that were included in the court's charge were definitions of "intentionally" and "knowingly." The charge did not define "reckless."

It is the trial court's responsibility to deliver to the jury "a written charge distinctly setting forth the law applicable to the case. . . ." TEX. CODE CRIM. PROC. art. 36.14; *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). The "law applicable to the case" includes the definitions of words or phrases defined by statute, which must be included in the jury charge. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (the jury must be instructed regarding statutory definitions affecting the meaning of an element of the offense). The Texas Penal Code states that a person "acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE § 6.03(c). While the charge gave the jury the option to convict Jackson of a lesser-included offense involving a reckless mental state, the charge did not define "reckless." Omitting the definition of "reckless" constitutes error in the jury charge. *Villarreal*, 286 S.W.3d at 329.

### C.     Harm Analysis

Having held that the jury charge was erroneous, we must determine whether the error egregiously harmed Jackson. *Price*, 457 S.W.3d at 440. "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (cleaned up). "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Id.* at 490. "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). In examining the record for egregious harm, we consider the state of the evidence, the jury charge, the arguments of the parties, and any other relevant information in the record. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

### 1.     The evidence

The evidence does not weigh in favor of a finding of egregious harm. To prove Jackson guilty of indecency with a child by exposure, the State was required to prove that Jackson exposed his genitals, with intent to arouse or gratify the sexual desire of any person, while knowing a child younger than 17 years of age was present. *See* TEX. PENAL CODE § 21.11(a)(2)(A). To prove indecent exposure, the State was required to prove that Jackson exposed his genitals with intent to arouse or gratify

8

the sexual desire of any person while being reckless about whether another present would be offended or alarmed by the act. *See id.* § 21.08(a). The evidence showed that Jackson stood next to E.M. in line at the store. His pants were unzipped, and he touched his penis with his hands. Both E.M. and the cashier testified that they could see Jackson's penis when he did so. When the cashier noticed the exposure and said something, Jackson left.

"The offense of indecency with a child by exposure is complete once the defendant unlawfully exposes himself in the required circumstances." *Harris v. State*, 359 S.W.3d 625, 631 (Tex. Crim. App. 2011). The child need only be in the accused's presence for the offense to be effectuated; the child does not have to be aware of the exposure. *Id.*; *see also Ex parte Amador*, 326 S.W.3d 202, 209 (Tex. Crim. App. 2010) (the offense of indecency with a child by exposure "is based on the defendant's actions and mental state, not the other person's comprehension") (Cochran, J., concurring). The record reflects that Jackson was standing close to E.M. when he exposed himself, supporting a conclusion that he knew that a minor child was present as he did so. The evidence does not support that Jackson *inadvertently* exposed himself in front of a child. Therefore, the lack of a definition of "reckless," as would be applied to the lesser-included offense of indecent exposure, did not deprive Jackson of a valuable right or vitally affect his defensive

9

theory. *See Taylor*, 332 S.W.3d at 490. This factor does not weigh in favor of a finding of egregious harm.

## 2. The jury charge

The jury was instructed as follows:

> Unless you find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree you will acquit the Defendant of Indecency with a child by exposure and next consider whether the defendant is guilty of the lesser offense of indecent exposure.

This is an "acquittal first" instruction, allowing the jury to consider multiple degrees of offenses for the same conduct, and it has a long history in Texas law. *Barrios v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009) (citing cases approving an acquittal first instruction). While affirming this type of instruction, the court in *Barrios* suggested that it may be a better practice for trial courts to (1) include an instruction that explicitly informs the jury that it may read the charge as a whole and (2) use language like ". . . or if you are unable to agree, you will next consider" instead of ". . . you will acquit . . . and next consider." *Id.* The court explained that these practices would make clear to the jury that, at its discretion, it may consider the lesser-included offenses before making a final decision as to the greater offense. *Id.*

Here, the jury charge did not include an instruction to read the charge as a whole, and it used the less favorable practice of instructing the jurors that if they had

10

a reasonable doubt or were unable to agree, they should acquit Jackson of indecency with a child by exposure and then consider the lesser offense of indecent exposure. The jury found Jackson guilty of the greater offense: indecency with a child by exposure. Even though this instruction did not follow the recommendations for an acquittal first instruction that the Court of Criminal Appeals suggested in *Barrios*, the wording of the instruction does not weigh in favor of a finding of egregious harm. *See id.* at 353 (holding that while the "inartful" use of "will acquit" could have confused the jury, there was no indication that it did so when the jury found appellant guilty of the greater offense). The jury receives the entire written charge, including instructions for both the greater and lesser included offenses, when it begins deliberating. The jury has discretion to deliberate how it chooses, including deciding the method of discussion, speaking order, and the order in which the parts off the jury charge are considered. *Id.* at 352.

Moreover, the jury charge instructed that if the jurors found beyond a reasonable doubt that Jackson was guilty of either offense but had a reasonable doubt as to which one, they "must resolve that doubt in [Jackson's] favor." This instruction is also long recognized in Texas law. *Id.* (citing 19th and early 20th century cases approving of a charge giving the defendant the benefit of a reasonable doubt between the degrees of an offense). In deciding that Jackson was guilty of the greater offense, the instruction on the benefit of the doubt between offenses became superfluous. *Id.*

11

The jury unanimously found Jackson guilty of the greater offense. There is no indication that they were confused between the charges or confused by the lack of a definition of "reckless" in making their decision. The charge weighs against a finding of egregious harm.

### 3. Arguments of counsel

Neither party argued that Jackson recklessly exposed himself. Jackson's theory was that he was not guilty of either the charged offense or the lesser-included offense because he never exposed himself at all. Jackson cross-examined each witness by questioning their credibility and highlighting slight differences in their testimony. Jackson did not argue that he was being reckless when he was in the store. He did not argue that he accidentally or inadvertently exposed himself or that he did not know that E.M., a minor, was present.

In closing, Jackson's counsel argued that the case was based on false accusations and lack of evidence. Specifically, he argued that the witnesses were not credible and that the video was evidence that Jackson did not expose himself. The issue of recklessness was not part of the defense's theory of the case.

The State argued that the witnesses' testimony and the video led to the conclusion that Jackson knowingly exposed himself in front of a minor child. The State encouraged the jury to make reasonable inferences, highlighting the video and

that both Plascencia and E.M. testified that Jackson's pants were unzipped as he touched his penis in front of them.

Neither of the parties' arguments required the jury to decide whether Jackson acted recklessly. This factor weighs against a finding of egregious harm.

### 4. Other relevant information

The jury asked several questions during deliberation, including asking to replay a video and asking for clarification of Plascencia's testimony. None of the jury's questions, nor the testimony that was read back to the jury in response, pertained to the lesser offense or recklessness. The questions did not indicate that the jury was confused by the charge. Instead, the questions from the jury were related to Jackson's arguments on witness credibility.

After reviewing the record, we hold that though the charge erroneously omitted the definition of "reckless," the omission did not cause Jackson egregious harm. *Price*, 457 S.W.3d at 440. We overrule his sole issue on appeal.

**Conclusion**

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Justices Keyes, Kelly, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).