**Affirmed and Opinion Filed March 1, 2024.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00361-CR**

**MONTEZ ANTONIO ASHBY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-20-75720-V**

## MEMORANDUM OPINION

Before Justice Pedersen, III, Justice Garcia, and Justice Kennedy
Opinion by Justice Pedersen, III

Montez Ashby appeals the trial court's judgment convicting him of murder. A jury found appellant guilty and assessed his punishment at forty years' imprisonment. Appellant raises three issues on appeal arguing (1) the evidence is insufficient to disprove self-defense, (2) the evidence is insufficient to disprove the justification of using deadly force, and (3) the trial court erred by failing to instruct the jury that the State has the burden of disproving self-defense beyond a reasonable doubt. As to appellant's sufficiency issues, we conclude the jury rationally could have found each element of the offense was proven beyond a reasonable doubt and

rationally could have rejected appellant's self-defense claims. Thus, we overrule appellant's first and second points of error. As to appellant's third issue, we note the trial court delivered a charge that properly instructed the jury to acquit appellant if it believed he acted in self-defense to protect his life and property or if it had a reasonable doubt as to whether he acted in self-defense. Thus, the trial court did not err by submitting the jury charge without including an instruction that the State was required to disprove the issue of self-defense beyond a reasonable doubt. Accordingly, we also overrule appellant's third issue and affirm the trial court's judgment.

## I.    BACKGROUND

On the night of April 10, 2022, Travis Crowder picked up his friend Teresa Hall, and the two spent the evening at his residence smoking Phencyclidine [PCP]. At around 2:00 a.m., the PCP ran out, and Hall asked Crowder to take her home. As Crowder drove Hall home, the two encountered appellant driving in his vehicle in the opposite direction. Appellant and Crowder had been childhood friends. Appellant invited Crowder over to his residence to smoke more PCP.

After Hall and Crowder arrived at appellant's house, they sat in appellant's living room and smoked PCP with him. Hall did not hear much of the discussion between Crowder and appellant because she had "earbuds" in her ears and spent most of her time on Facebook listening to music. At some point in the evening, appellant and Crowder walked to a back room in the house. While they were in the

–2–

back room, Hall thought she heard some "play fighting" but no "scuffling" or anyone "fearing for their life."

After Crowder failed to return from the back room, Hall saw appellant pacing back and forth and then noticed that Crowder was dead. Crowder had been shot six times. Hall observed that appellant was holding a gun. She was in fear for her life and believed that appellant would also kill her. Hall called 911 to report the shooting.

Hall later told police that she did not observe Crowder acting angry or aggressive towards appellant. She told police that neither she nor Crowder intended to rob appellant of his drugs and that neither of them had a gun.

Officer Corey Wheeler with the Dallas Police Department was the first officer on the scene. Appellant approached Wheeler with his hands up and stated that somebody had "tried to jack him." Wheeler entered the residence and found Crowder lying in a chair unresponsive and not breathing. Dallas Fire Rescue pronounced Crowder dead at the scene. Wheeler briefly checked Crowder's pockets and did not locate any drugs or weapons on his person or near him.

Madison Gaytan, a crime scene investigator formerly with the Dallas Police Department, located four spent 380 caliber cartridge casings in the kitchen. The spent cartridge casings were confirmed to belong to the handgun recovered from appellant's back pocket.

Detective Frank Serra with the Dallas Police Department interviewed appellant. During the interview, appellant alleged that at some point in the evening,

while all three individuals were smoking PCP, he discovered that his glove that contained the rest of the PCP went missing from his bag. Appellant suspected Crowder had taken it and demanded it back. Appellant claimed that at that point, Crowder struck him on his jaw causing appellant to push him back. Appellant stated that the punch did not "faze" or hurt him because he was "ready to fight." Appellant demonstrated for Serra that after being punched, he pushed Crowder back, pulled out his handgun, and "unloaded the clip." Appellant admitted to shooting Crowder.

Multiple times during the interview, Serra asked appellant if he had seen any weapons in Crowder's hands, but appellant refused to answer his question. And when Serra asked appellant if Crowder verbally threatened him, appellant stated only that Crowder "growled" at him. At no time during the interview did appellant tell Serra he shot Crowder to defend himself, instead, he repeatedly stated, "you come off getting in my business, you fuck with me," followed by "he got what's coming." Further, appellant never told Serra he had been in fear for his life during his encounter with Crowder. Appellant, did however, repeatedly state that he felt no remorse for killing Crowder because "no one fucks with [him] point blank."

Serra's investigation demonstrated that appellant wielded a deadly weapon during his encounter with Crowder, but that Crowder did not. Serra believed that based upon the bullet holes in appellant's kitchen wall, appellant had Crowder cornered when he shot him five times. Additionally, according to Serra, the evidence showed that Crowder stumbled to a chair where appellant fired a sixth shot into

Crowder at close range. The medical examiner confirmed Serra's conclusion and testified that one of the gunshot wounds was consistent with someone being seated in a chair with his head leaned back.

Appellant was subsequently arrested and charged with murdering Crowder. During a jail call, appellant told the caller that he should have killed Hall as well.

At trial, Serra testified that based on the totality of the circumstances, the use of force by Crowder during the physical altercation did not rise to the level justifying deadly force.

A jury found appellant guilty of murdering Crowder and after finding the two punishment enhancement paragraphs true, assessed his punishment at forty years' incarceration.

## II.    SUFFICIENCY POINTS[1]

### A.    Standard of review and applicable law

To prevail on a claim of self-defense with the use of deadly force, a defendant must prove: (1) he would have been justified in using force against the other person; and (2) it was reasonable to believe that "deadly force [was] immediately necessary [for protection] against the other's use or attempted use of unlawful deadly force." TEX. PENAL CODE ann. § 9.32(a). A person is justified in using force against another when and to the degree that person reasonably believes the force is immediately

---

[1]We will address appellant's self-defense sufficiency points together.

necessary to protect himself from another's use or attempted use of unlawful force. *Id.* § 9.31(a). The use of deadly force may be justified when a person reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id.* at § 9.32 (a)(2)(A). Additionally, the use of deadly force may be justified when a person reasonably believes the deadly force is immediately necessary to prevent the other's imminent commission of robbery. *Id.* § 9.32 (a)(2)(B). Deadly force is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3).

In a claim of self-defense, the defendant bears the burden to produce some evidence that supports his claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once a defendant produces some evidence raising the issue of self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Zuliani,* 97 S.W.3d at 594; *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). To meet its burden of persuasion, the State is not required to produce additional evidence. *Saxton*, 804 S.W.2d at 913. The burden of persuasion requires only that the State prove its case beyond a reasonable doubt. *Id.* If the jury finds the defendant guilty, it has made an implicit finding against any defensive theory raised by the defendant. *Id.* at 914; *see also Zuliani*, 97 S.W.3d at 594; *London v. State*, 325 S.W.3d 197, 202

(Tex. App.—Dallas 2008, pet. ref'd) (holding that a jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory).

Accordingly, when a defendant challenges the legal sufficiency of the evidence to support the jury's implicit rejection of his self-defense claim, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914; *see Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

## B. Discussion

Appellant does not challenge the sufficiency of the evidence to support the jury's finding of the essential elements of murder beyond a reasonable doubt. Instead, appellant challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claims. This is consistent with his requesting a self-defense instruction at trial since "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes [a] justification to excuse the

otherwise criminal conduct." *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

With that in mind, we note that with regard to the essential elements of the offense, the jury was charged that it must find appellant committed the offense of murder if, if it found from the evidence beyond a reasonable doubt that on or about April 11, 2020, in Dallas County, Texas, the Defendant, did unlawfully then and there intentionally or knowingly cause the death of Travis Crowder, an individual, by shooting deceased with a firearm, a deadly weapon. The jury was also charged that they must find appellant guilty of murder if they found from the evidence beyond a reasonable doubt that on or about April 11, 2020, in Dallas County, Texas, the Defendant, did unlawfully then and there intend to cause serious bodily injury to Travis Crowder, an individual, and did then and there commit an act clearly dangerous to human life, to-wit: by shooting Travis Crowder with a firearm, a deadly weapon, and did thereby cause the death of Travis Crowder.

The evidence is undisputed that appellant shot Crowder—an act clearly dangerous to human life and—Crowder died as a result. Accordingly consistent with appellant's request for the self-defense instruction, the evidence establishes every essential element of the offense of murder beyond a reasonable doubt.[2] *See Saxton*,

---

[2]A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. *See* TEX. PENAL CODE ann. § 190.02 (b)(1). Alternatively, a person commits murder when he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *Id.* § 19.02 (b)(2).

804 S.W.2d at 914. Therefore, we examine whether the evidence is insufficient to support the jury's rejection of appellant's claim that he acted in self-defense.

Initially, we note that Officer Cory Wheeler, the first officer on the scene, testified that appellant said to him, "I really messed up this time, haven't I?" We also point out that during appellant's video-recorded interview, which was played for the jury, appellant admitted he shot and killed Crowder. At one point during the interview, conducted by Serra, appellant demonstrated how he pulled out his handgun and unloaded the clip after Crowder punched him. Additionally, appellant stated that when he confronted Crowder about his alleged missing PCP, Crowder "walked up" on him, and the two began to fight. Appellant told Serra that Crowder struck him once on his jaw, but the strike did not "faze" him because he was "ready to fight." In fact, appellant repeatedly stated that he was not "fazed" by Crowder's punch and that he shot Crowder because he "was not playing no games."

Multiple times during the interview, Serra asked appellant if he had seen any weapons in Crowder's hands, but appellant refused to answer his question. And when Serra asked appellant if Crowder verbally threatened him, appellant stated only that Crowder "growled" at him. At no time during the interview did appellant tell Serra he shot Crowder to defend himself, instead, he repeatedly stated, "you come off getting in my business, you fuck with me," followed by "he got what's coming." Further, appellant never told Serra he had been in fear for his life during his

encounter with Crowder. Appellant, did however, repeatedly state that he felt no remorse for killing Crowder because "no one fucks with [him] point blank."

Serra testified that his investigation demonstrated that appellant wielded a deadly weapon during his encounter with Crowder, but that Crowder had never utilized a deadly weapon. Serra further testified that in his twelve years of experience as a police officer, the individuals that he encountered who had recently participated in fistfights exhibited "scrapes, bruising, swelling, blood, and discoloration to or cuts on the face, knuckles, [or] hands." But according to Serra, appellant did not exhibit any injuries consistent with someone who had been in a fistfight. The jury was shown images of appellant's face and hands on the day of the shooting—images devoid of any visible cuts, scrapes, or bruises.

Finally, Serra testified that based upon the bullet holes in the kitchen wall, it appeared that appellant had Crowder cornered when he shot him five times. Additionally, according to Serra, the evidence showed that Crowder stumbled to a chair where appellant fired a sixth shot into Crowder at close range. The medical examiner confirmed Serra's conclusion and testified that one of the gunshot wounds was consistent with someone being seated in a chair with his head leaned back.

In sum, Serra testified that he believed the use of force by Crowder during the physical alteration did not rise to the level justifying deadly force. The evidence supports the jury's rejection of appellant's claim that he was forced to immediately

use deadly force against Crowder to protect himself from Crowder's use of deadly force. *See* TEX. PENAL CODE ann. § 9.31(a).

As it relates to appellant's self-defense robbery claim, the evidence also supports the jury's rejection of appellant's claim that he was forced to immediately use deadly conduct to protect Crowder's imminent commission of the robbery of his property; namely his PCP. *See id.* § 9.32 (a)(2)(B). During his interview, Appellant alleged that at some point in the evening, he went to his bathroom and discovered that his stash of PCP was missing. Appellant suspected Crowder stole it. But several witnesses testified there was no PCP found on Crowder's person. Moreover, Hall testified that neither she nor Crowder intended to rob appellant and that neither she nor Crowder possessed a weapon that night.

In our review, we defer to the jury's assessment of the credibility of the witnesses, and the jury in this case could have found and in fact did find the elements of the charged offense of murder beyond a reasonable doubt and disbelieved appellant's claim as it relates to his claim of self-defense of his person as well as to his claim that deadly force was immediately necessary to prevent Crowder's imminent commission of robbery. *See Saxton,* 804 S.W.2d at 910 (holding that as the fact finder and judge of the credibility of the witnesses, the jury was free disbelieve the testimony tending to show that the victim had been the aggressor, thereby rationally determining that the appellant's use of deadly force was not immediately necessary); *Smith v. State*, 355 S.W.3d 138, 146 (Tex. App.—Houston

[1st Dist.] 2011, pet. ref'd) (noting defendant's testimony does not conclusively prove a claim of self-defense because the jury could reject the testimony). Based on these facts, we hold that a rational jury could have found beyond a reasonable doubt against appellant on the self-defense issues. We overrule appellant's first and second points of error.

## III.    JURY CHARGE ISSUE

In his third point, appellant claims the trial court erred by refusing to include additional language in the trial court's self-defense instruction in the jury charge. Specifically, appellant claims the jury should have been instructed that the State has the burden of disproving self-defense beyond a reasonable doubt. But here, the trial court delivered a charge that properly instructed the jury to acquit appellant if it believed he acted in self-defense or if it had a reasonable doubt as to whether he acted in self-defense. Accordingly, the trial court did not err by refusing to include appellant's requested language in the self-defense charge.

### A.    Standard of review and applicable law

In analyzing a jury-charge issue a reviewing court should first determine whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error exists, the court must next determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When, as in this case, the error was objected to, reversal is warranted only if

the reviewing court finds any actual harm to the defendant. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

The purpose of the jury charge is to inform the jury of the applicable law and guide the jurors in applying it to the facts of the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Under article 36.14 of the Code of Criminal Procedure, the trial court shall deliver to the jury "a written charge distinctly setting forth the law applicable to the case[.]" TEX. CODE CRIM. PROC. ann. art. 36.14; *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). This duty exists even when defense counsel fails to object to inclusions or exclusions in the charge and thus may require the trial court to *sua sponte* instruct the jury on the law applicable to the case. *Taylor*, 332 S.W.3d at 486.

When a defense is raised by the evidence at trial, the trial court is required to instruct the jury it must acquit the defendant if it has reasonable doubt on the existence of a defensive issue. TEX. PENAL CODE ann. § 2.03(d).

As discussed above, the defendant has the initial burden to produce evidence supporting self-defense. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913. Once the defendant produces some evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. *Saxton*, 804 S.W.2d at 913–14. This burden does not require the State to produce evidence refuting the self-defense claim; rather, the burden requires the State to prove its case beyond a reasonable doubt. *Id.* The Penal Code places the burden on the State to prove each element of

–13–

the offense charged; it does not require the State to "negate the existence of a defense." TEX. PENAL CODE ann. § 2.03(b).

## B.    The trial court's self-defense charges

The jury was instructed on two theories of self-defense—defense of a person and defense of a person—prevention of robbery. After setting out the applicable definitions for each theory, the jury charge's application paragraphs were set out as follows:

> Therefore, if you find from the evidence beyond a reasonable doubt that the Defendant, did intentionally and knowingly cause the death of Travis Crowder, by shooting him with a firearm, a deadly weapon, as alleged in the indictment, but you further find from the evidence, as viewed from the standpoint of the Defendant at the time, that from the words or conduct, or both, of Travis Crowder, that it reasonably appeared to the Defendant that his life or person was in danger, and there was created in his mind a reasonable expectation of fear of death or serious bodily injury, from the use of unlawful deadly force at the hands of Travis Crowder, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Travis Crowder's use or attempted use of unlawful deadly force, he did shoot Travis Crowder, then you should acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the Defendant was acting in self-defense, then you will give the Defendant the benefit of that doubt and say by your verdict, not guilty.
>
> If you unanimously find from the evidence beyond a reasonable doubt that at the time and place in question the Defendant did not reasonably believe that he was in danger of death or serious bodily injury at the hands of Travis Crowder, or that the Defendant, under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Travis Crowder's use or attempted use of unlawful deadly force, then you will find against the Defendant on the issue of self-defense.

And as it relates to deadly force in defense of a person: robbery, the trial court set out the application as follows:

> Therefore, if you find from the evidence beyond a reasonable doubt that the Defendant, did intentionally and knowingly cause the death of Travis Crowder, by shooting him with a firearm, a deadly weapon, as alleged in the indictment, but you further find from the evidence, as viewed from the standpoint of the Defendant at the time, that from the words or conduct, or both, of Travis Crowder, that it reasonably appeared to the Defendant that it was necessary to prevent Travis Crowder's imminent commission of robbery, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Travis Crowder's imminent commission of robbery, he did shoot Travis Crowder, then you should acquit -the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense, then you will give the defendant the benefit of that doubt and say by your verdict, not guilty.
>
> If you unanimously find from the evidence beyond a reasonable doubt that at the time and place in question the Defendant did not reasonably believe that the commission of robbery by Travis Crowder was imminent, or that the Defendant, under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that deadly force actually was immediately necessary to protect himself against Travis Crowder's imminent commission of robbery, then you will find against the defendant on the issue of self-defense.

The trial court also instructed the jury that the burden of proof of beyond a reasonable doubt was on the State and that the presumption of innocence was sufficient to acquit the defendant.

Here, the charge adequately instructed the jury on the State's burden and the jury's consideration of appellant's claim of self-defense and deadly conduct in defense of person: robbery. *See id.*; *Luck v. State*, 588 S.W.2d 371, 375 (Tex. Crim.

App. 1979) (op. on reh'g); *Brotherton v. State*, 666 S.W.2d 126, 127–28 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd). Accordingly, the trial court did not err by submitting the jury charge without including an instruction that the State was required to disprove the issue of self-defense beyond a reasonable doubt. *Id.* We overrule appellant's third point of error.

## IV.    CONCLUSION

Having overruled appellant's three points of error, we affirm the trial court's judgment.


220361f.u05

Do Not Publish
TEX. R. APP. P. 47

/Bill Pedersen, III/

BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MONTEZ ANTONIO ASHBY,
Appellant

No. 05-22-00361-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-20-75720-V.
Opinion delivered by Justice
Pedersen, III. Justices Kennedy and
Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 1st day of March, 2024.