

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00042-CR

_____

DEQUANTE FLOYD ELESTON, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1781551

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Dequante Floyd Eleston was indicted on three counts: (1) assault against a family member by impeding breathing or circulation of the blood for an incident alleged to have occurred on April 8, 2023, with a prior family-violence conviction (Count One); (2) assault against a family member causing bodily injury for an incident alleged to have occurred on April 8, 2023, with a prior family-violence conviction (Count Two); and (3) continuous family violence pertaining to incidents alleged to have occurred on February 28, 2023 and April 8, 2023 (Count Three). *See* Tex. Penal Code Ann. §§ 22.01(b)(2), (b-3), 25.11(a). The State later waived Count One right before voir dire, and a jury trial proceeded on Counts Two and Three. The jury ultimately found Eleston guilty of Count Two, which necessitated that the jury not reach Count Three. The jury assessed Eleston's punishment at thirty years' confinement, and the trial court sentenced him accordingly.

In two issues on appeal, Eleston complains of jury-charge error pertaining to the trial court's inclusion of two extraneous-offense instructions in the charge. Even if we assume that the trial court erred by including the complained-of instructions, Eleston—who did not object to the instructions—has not been egregiously harmed by the allegedly erroneous charge. Accordingly, we will affirm the trial court's judgment.

## II. BACKGROUND

### A. The February 28, 2023 Assault

On February 28, 2023, Arlington police officer Leonard Moon was working a burglary detail outside of a vape shop. Moon was in an unmarked vehicle and was tasked with watching the vape shop and reporting any suspicious activity to marked police units in the area. While observing the shop, Moon "witnessed a domestic violence situation happening" between a male and a female. The male and female were later identified as Eleston and Eleston's girlfriend, Jasmine Campbell.

Moon recounted that he heard "loud screaming" from near the vape shop, and he saw Eleston "grabbing, pushing[,] or trying to get" Campbell into a car. Moon stated that Eleston grabbed Campbell by her hair, aggressively pulling her along to the car. Moon described the force Eleston used as strong enough to rip the hair from Campbell's head. Moon called marked police units to the scene.[1] After he called for the marked units, Moon observed Campbell attempt to walk away from Eleston. He saw Eleston aggressively follow her and a "tussle ensued." During that tussle, Campbell fell to the ground and Eleston looked like he was getting ready to kick Campbell when uniformed police officers arrived at the scene.

---

[1]Moon testified that he did not intervene in the situation because of "the policy and the guidelines for the burglary detail."

**B. The April 8, 2023 Assault**

On April 8, 2023, Danyae Ingram was sitting in her car outside of a grocery store with her car's window rolled down. Ingram observed two people—later identified as Eleston and Campbell—walking up to the store, and she heard "foul language and yelling" coming from the two of them. Ingram stated that Eleston's tone was "[a]gitated and upset." Ingram then got out of her car and walked toward the store's entrance. As she was walking toward the store, she heard a "thump" and saw "a shadow of a body against the window" of the store. As she continued walking, Ingram observed that Eleston had Campbell "pinned in a corner" outside the store's entrance, and Ingram saw movements as if Eleston was hitting Campbell with his fist. Ingram yelled at Eleston, telling him to leave Campbell alone. She also asked for someone in the store to call the police. At that point, Eleston took off running and Ingram remained with Campbell, who was "crying hysterically" and complaining that her face and chest hurt.

Police and paramedics arrived on the scene. A paramedic treated Campbell for tenderness to her head and abrasions to her lips. That paramedic reported that Campbell had complained of head pain as a result of being "hit multiple times on the head and the face" by Eleston.

A police officer who arrived at the scene used his body camera to record the store's surveillance video showing the assault. That video depicts the following:

Eleston and Campbell walking outside of the store; Campbell picking up an object[2] and throwing it at Eleston; Campbell running away from Eleston toward the store; Eleston running after Campbell; Eleston knocking Campbell to the ground; Campbell getting up and running away from Eleston toward the store; Eleston running after Campbell; Eleston grabbing Campbell before she enters the store and pinning her up against a window; Campbell attempting to free herself from Eleston; Eleston striking Campbell with either a fist or an open hand at least six times; and Eleston running away from the store.

## C. Eleston's Trial and the Complained-Of Jury Instructions

As noted above, Eleston's case proceeded to trial on Counts Two and Three. Numerous witnesses testified at his trial regarding the February 28, 2023 and April 8, 2023 assaults.[3] The trial court admitted into evidence Eleston's signed stipulation that on October 10, 2014, he had been convicted of assaulting a family member.

After both sides had rested and closed during the guilt–innocence phase of Eleston's trial, the trial court conducted a hearing pertaining to the court's proposed jury charge. Neither side objected to the charge. The charge included the following instructions relating to evidence of extraneous offenses:

---

[2]The police officer testified that the object was a landscaping paver. Eleston did not request a self-defense instruction at trial.

[3]Neither Campbell nor Eleston testified in the guilt–innocence phase of his trial.

The state has introduced evidence of extraneous crimes or bad acts other than the ones charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, in determining the nature of the relationship between the actor and the alleged victim. You cannot consider the testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes or bad acts, if any were committed.

The state has introduced evidence of extraneous crimes or bad acts other than the ones charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense alleged against him in the indictment in this case and for no other purpose. You cannot consider the testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes or bad acts, if any were committed.

Through this appeal, Eleston complains about those instructions.

## III. DISCUSSION

In two issues, Eleston contends that the trial court erred by including the extraneous-offense instructions in the jury charge. In his first issue, Eleston argues that "[t]he blanket 404(b) instruction should not have been included." In his second issue, Eleston contends that the trial court erred by including extraneous-offense instructions under Texas Rule of Evidence 404(b) and Texas Code of Criminal Procedure Article 38.371 because "[t]here were no extraneous offenses introduced at trial." We will discuss these issues together.

6

## A. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if there is no error, our analysis ends. *Id.* If, however, the charge is erroneous, then we must decide whether the appellant was harmed. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *see Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Ngo*, 175 S.W.3d at 743. If a defendant timely objects to alleged jury-charge error, the record need only show "some harm" to warrant reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). But in the absence of a timely objection—as was the case here—the record must show "egregious harm" to warrant reversal. *Id.*

Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011) (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor*, 332 S.W.3d at 489. In examining the record to determine whether charge error

has resulted in egregious harm, we consider the actual degree of harm in light of (1) the entire jury charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Almanza*, 686 S.W.2d at 171; *Peralez v. State*, No. 02-23-00218-CR, 2024 WL 1792403, at *7 (Tex. App.—Fort Worth Apr. 25, 2024, pet. ref'd) (mem. op., not designated for publication).

## B. Applicable Law

An extraneous offense is any act of misconduct—whether resulting in prosecution or not—that is not shown in the charging instrument and that was shown to have been committed by the accused beyond a reasonable doubt. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003); *Yepez v. State*, 696 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2022, no pet.). "Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (citing Tex. R. Evid. 404(b)). However, Texas Rule of Evidence 404(b)(2) allows for such evidence of extraneous offenses to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2).

Moreover, Texas Code of Criminal Procedure Article 38.371(b), which applies to prosecutions for assaults against family members, expressly allows "evidence of all

8

relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." Tex. Code Crim. Proc. Ann. art. 38.371(b). "Thus, Article 38.371(b) expressly provides for the admission of extraneous[-]offense evidence regarding the nature of the relationship between an accused and a complainant." *Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *4 (Tex. App.—Fort Worth Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication) (first citing *James v. State*, 623 S.W.3d 533, 546 (Tex. App.—Fort Worth 2021, no pet.); and then citing *Mourning v. State*, No. 02-19-00168-CR, 2020 WL 6165309, at *4–5 (Tex. App.—Fort Worth Oct. 22, 2020, no pet.) (mem. op., not designated for publication)).

A trial court is required to instruct the jury on the "law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14; *see Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The court's duty to instruct the jury on the "law applicable to the case" exists even when the defendant fails to object to inclusions or exclusions in the charge. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Taylor*, 332 S.W.3d at 486. The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Vega*, 394 S.W.3d at 518.

## C. Analysis

In his brief, Eleston states that "[t]here were no extraneous offenses introduced at trial." Eleston notes that "[t]he only evidence before the jury involved the two

alleged offenses—the April 8th incident in Count Two and the February 28th incident as well as [the] April 8th incident in Count Three," stating that "[t]here was no evidence of incidents other than these two from the indictment." The State agrees with Eleston that it did not introduce any extraneous offenses at his trial. Eleston contends that because no evidence of extraneous offenses was introduced at his trial, the trial court erred by including the extraneous-offense instructions in the jury charge.

We will assume, without deciding, that the trial court erred by including the extraneous-offense instructions in the jury charge because no evidence of extraneous offenses was introduced at trial. *See Hess v. State*, 224 S.W.3d 511, 515 (Tex. App.—Fort Worth 2007, pet. ref'd) (holding that trial court erred by including "wholly unnecessary" instruction in jury charge). We thus turn to the question of whether Eleston has been egregiously harmed by the allegedly improper instructions by examining the four *Almanza* factors for determining whether charge error has resulted in egregious harm. *See Almanza*, 686 S.W.2d at 171.

With regard to the first *Almanza* factor—the entirety of the charge—the application paragraphs spoke of the charged offenses. In this regard, the application paragraphs pertaining to Count Two asked the jury to consider the evidence relating to the April 8, 2023 assault, and the application paragraphs pertaining to Count Three asked the jury to consider the evidence relating to the February 28, 2023 and April 8, 2023 assaults. Those application paragraphs did not reference any extraneous

10

offenses. This factor weighs against a finding of harm. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."); *Hernandez v. State*, No. 05-22-00419-CR, 2024 WL 4343441, at *15 (Tex. App.—Dallas Sept. 30, 2024, no pet.) (mem. op.) ("If appellant is correct that a Section 7.02(a)(2) instruction was unnecessary and unsupported by the evidence, then it would be best described as a superfluous abstraction . . . that is not necessary to an understanding of concepts or terms contained in the application paragraph. Such instructions are generally innocuous." (internal quotations and citation omitted)).

With regard to the second *Almanza* factor—the state of the evidence—Eleston acknowledges that "[t]here were no extraneous offenses introduced at trial." Rather, the evidence at trial—as summarized in our descriptions of the assaults above—was sufficient for the jury to find Eleston guilty, and the trial court's inclusion of the extraneous-offense instructions did nothing to negate that evidence or prevent the jury from considering it.[4] This factor weighs against a finding of harm. *See Ryan-Poydras v. State*, No. 02-23-00072-CR, 2024 WL 3458075, at *10 (Tex. App.—Fort

---

[4]In his brief, Eleston argues that the state of the evidence supports a finding of harm, contending that "[t]he State spent as much time with the earlier February incident . . . as it did with the offense of conviction." But just because the jury did not convict Eleston of Count Three does not transform the February 28, 2023 assault into an extraneous offense. *See Manning*, 114 S.W.3d at 926 ("An extraneous offense is any act of misconduct, whether resulting in prosecution or not, *that is not shown in the charging papers*." (emphasis added)).

Worth July 18, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that this factor weighed against finding of harm when "evidence was sufficient for the jury to find Appellant guilty" and alleged charge error "did not negate that evidence or prevent the jury from considering it").

With regard to the third *Almanza* factor—the arguments of counsel—neither the State nor Eleston discussed any extraneous offenses with the jury. Rather, the arguments of counsel focused on the February 28, 2023 and April 8, 2023 assaults. And while both the State's counsel and Eleston's counsel spoke generally about the "cycle of violence" during their closing arguments, such a general statement was not a remark on any extraneous offense; rather, such a remark could be construed as a natural summation of the evidence or a reasonable deduction from the evidence— that Campbell was unwilling or unable to get away from a man who had repeatedly abused her. *See Brown v. State*, 270 S.W.3d 564, 571 (Tex. Crim. App. 2008) (holding that proper jury argument includes a summation of the evidence and a reasonable deduction from the evidence). This factor weighs against a finding of harm.

With regard to the fourth *Almanza* factor—any other relevant information revealed by the trial record as a whole—Eleston argues that the repeated mention of the "cycle of violence" during voir dire and closing argument supports a finding of egregious harm. We disagree. As noted above, such a general statement regarding the "cycle of violence" was not a remark on any extraneous offense. Moreover, even if it could be construed as a remark on an extraneous offense, the trial court's extraneous-

12

offense instructions—that warned the jury about improperly considering extraneous offenses—would benefit rather than harm Eleston. *See Fair v. State*, 465 S.W.2d 753, 755 (Tex. Crim. App. 1971) (holding that trial court did not commit reversible error by including limiting instruction on extraneous offenses in charge because said instruction "was not harmful but beneficial" to the defendant). This factor weighs against a finding of harm.

Having examined the four *Almanza* factors, we conclude that the allegedly erroneous jury charge did not deprive Eleston of a valuable right, vitally affect his defensive theory, or make the case for conviction clearly and significantly more persuasive. *See Taylor*, 332 S.W.3d at 490; *Almanza*, 686 S.W.2d at 172. Accordingly, we hold that Eleston was not egregiously harmed by the allegedly erroneous jury charge. *See Fair*, 465 S.W.2d at 755; *Popp v. State*, 634 S.W.3d 375, 395 (Tex. App.—El Paso 2021, pet. ref'd) ("[W]e find the Rule 404(b) instruction submitted in the jury charge was unnecessary, but nevertheless harmless because any limitation to the consideration of this evidence was error against the State and Popp is therefore in no position to complain.").

We overrule Eleston's two issues.

## IV. CONCLUSION

Having overruled Eleston's two issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  December 12, 2024